Alma Jean COGHILL, Appellant
(Plaintiff Below),

v.

Kenneth N. BADGER and the Indianapolis Public Transportation Corporation,
Appellees (Defendants Below).

No. 2–379A51.

Court of Appeals of Indiana,
Second District.

April 13, 1981.

Charles W. Runnels, Runnels, Pontius, Redstone & Ursulskis, John M. Choplin, II, Norris, Choplin & Johnson, Indianapolis, for appellant.

William K. Byrum, A. David Stippler, Daniel J. Fairley, Byrum, Gagnon, Diehl & Stippler, Indianapolis, for appellees.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant Alma Jean Coghill (Coghill) appeals from the trial court's grant of summary judgment in favor of defendants-appellees Kenneth N. Badger (Badger) and The Indianapolis Public Transportation Corporation (IPTC), which judgment barred Coghill's tort action, claiming (1) that the trial court erred in granting summary judgment in favor of IPTC because there were genuine issues as to the material facts of substantial compliance with the applicable notice statute, extension of the period for filing notice, and waiver of or estoppel to raise non-compliance with the notice statute; and (2) that even if summary judgment in favor of IPTC was proper, summary judgment barring Coghill's claim against Badger was improper because it was based upon an incorrect application of Ind. Code § 34–4–16.5–5(a),[1] which bars an action against a governmental employee if judgment has been rendered with respect to the governmental entity employing him.

We affirm.

## FACTS

The record discloses that on September 23, 1976, Coghill sustained injuries when the METRO bus in which she was a passenger

---

**1.** Ind. Code § 34–4–16.5–5(a) provides:

A judgment rendered with respect to or a settlement made by a governmental entity bars an action by the claimant against an employee whose conduct gave rise to the claim resulting in that judgment or settlement.

struck the rear of another vehicle. Badger was driving the bus at the time of the collision, which occurred on White River Parkway in Indianapolis. Two or three days later, IPTC sent a representative to Coghill's home to investigate the incident.

On October 5, 1976, Coghill's attorney, Charles W. Runnels (Runnels), telephoned Eugene Scott (Scott), a claims adjuster for IPTC. Runnels' affidavit alleges that during the conversation, Runnels indicated that he represented Coghill in her claim against METRO, "reference being made to the date, time, place, conditions, and cause of the accident involved, and as much information as was available regarding the nature and extent of plaintiff's injuries." On the same day, Runnels sent the following letter to Scott:

 October 5, 1976

Mr. Eugene Scott
Claims Department
Indianapolis Public Transportation Corp.
P. O. Box 2383
Indianapolis, Indiana 46206
Re: Accident: 9–23–76
 My Client: Jean Coghill
Dear Mr. Scott:

This will confirm our telephone conversation with your office on October 5 at which time we advised that we represent Jean Coghill in her claim for injuries resulting from the accident indicated. Please acknowledge this representation in writing.

 Very truly yours,
 /s/
 Charles W. Runnels

In a writing dated October 7, 1976, Scott acknowledged receipt of Runnels' letter of representation, and invited Runnels to contact Scott when Runnels wished to discuss the case.

On September 18, 1978, Runnels forwarded Coghill's medical reports and bills to Scott along with a copy of Coghill's intended complaint. An enclosed letter proposed that Scott call Runnels to discuss settlement. Runnels' affidavit alleges that Scott telephoned Runnels on September 21, 1978, and that the two talked over the damages aspect of the case.

On October 21, 1978, Coghill filed her complaint for damages against Badger, IPTC, and the City of Indianapolis.[2] On October 24, 1978, Badger and IPTC filed their motion for summary judgment, in which they asserted Coghill's failure to comply with the notice-of-claim requirements of Ind. Code §§ 34–4–16.5–7, –9, and –11. The trial court granted defendants' motion for summary judgment on December 18, 1978.

## ISSUES

Coghill raises two issues:

ISSUE ONE—Was summary judgment in favor of IPTC precluded by the existence of genuine issues with respect to the following material facts:

(a) Whether Coghill substantially complied with the notice requirements of Ind. Code §§ 34–4–16.5–7, –9, and –11;

(b) Whether IPTC's actions created an extension of the period for filing notice;

(c) Whether IPTC's actions amounted to a waiver of the notice requirements; and

(d) Whether IPTC's conduct created an estoppel to assert failure to comply with the notice requirements?

ISSUE TWO—Was the trial court's entry of summary judgment barring Coghill's claim against Badger improper because it was predicated upon an incorrect application of Ind. Code § 34–4–16.5–5(a)?

## DECISION

ISSUE ONE—Was summary judgment in favor of IPTC precluded by the existence of genuine issues with respect to the following material facts:

---

2. The trial court later granted the city's motion to dismiss. Coghill does not appeal the judgment dismissing the city.

(a) Whether Coghill substantially complied with the notice requirements of Ind. Code §§ 34–4–16.5–7, –9, and –11;

(b) Whether IPTC's actions created an extension of the period for filing notice;

(c) Whether IPTC's actions amounted to a waiver of the notice requirements; and

(d) Whether IPTC's conduct created an estoppel to assert failure to comply with the notice requirements?

PARTIES' CONTENTIONS—Coghill contends that certain oral and written communication between her attorney and the IPTC claims adjuster, coupled with IPTC's independent investigation of the incident, establish substantial compliance with the notice statute. Alternatively, she claims that the communication and investigation amount to an extension or waiver of, or an estoppel to assert non-compliance with, the notice requirements of Ind. Code § 34–4–16.5–7.

Badger and IPTC respond that IPTC's routine post-collision investigation was insufficient as a matter of law to establish substantial compliance, extension, waiver, or estoppel. Furthermore, they contend that the oral and written communication fails to show substantial compliance, extension, waiver, or estoppel because it does not satisfy the essential purpose of the notice statute, namely, to advise the governmental unit of the accident and surrounding circumstances.

CONCLUSION—The trial court properly entered summary judgment in favor of IPTC.

On appeal from a grant of summary judgment, we are required to determine if there is a genuine issue of material fact and if the trial court correctly applied the law. *Brandon v. State* (1976), 264 Ind. 177, 340 N.E.2d 756. *See also Boswell v. Lyon* (1980), Ind.App., 401 N.E.2d 735; *Richards v. Goerg Boat & Motors, Inc.* (1979), Ind. App., 384 N.E.2d 1084. This we proceed to do.

The notice statute at issue, Ind. Code § 34–4–16.5–7 states:

Except as provided in [§ 34–4–16.5–8, dealing with incompetent claimants] a claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision within one hundred eighty [180] days after the loss occurs. (hereinafter the notice statute)

Ind. Code § 34–4–16.5–9, which prescribes the contents of notice, calls for "a short and plain statement [of] the facts on which the claim is based[,]" including

the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of damages sought, and the residence of the person making the claim at the time of the .loss and the time of filing the notice. (hereinafter the contents statute)

Ind. Code § 34–4–16.5–11 demands that the requisite notice be in writing and delivered either in person or by registered or certified mail. (hereinafter the delivery statute)

The purpose of these statutes requiring notice to governmental entities by individual tort claimants is not in doubt. It is

"To inform the city officials with reasonable certainty of the time, place, cause and nature of the accident and the general nature and extent of the injuries so that the city might investigate all facts pertaining to its liability and prepare its defense, or adjust the claim."

*Galbreath v. City of Indianapolis* (1970), 253 Ind. 472, 477, 255 N.E.2d 225, 228 (quoting *Aaron v. City of Tipton* (1941), 218 Ind. 227, 230–31, 32 N.E.2d 88, 89). *Accord, Delaware County v. Powell* (1979), Ind., 393 N.E.2d 190; *City of Indianapolis v. Satz* (1978), 268 Ind. 581, 377 N.E.2d 623; *Geyer v. City of Logansport* (1977), 267 Ind. 334, 370 N.E.2d 333.

In *Geyer, supra*, our supreme court declared that in view of its underlying purpose, the notice statute "places an affirmative duty upon the plaintiff to deliver a

writing to the [governmental unit] manifesting the nature of the claim." 267 Ind. at 338, 370 N.E.2d at 336. *See also Powell, supra.* On several occasions, it has indicated that a potential claimant can satisfy the statutory mandate through "substantial compliance" with the notice requirements. *See, e.g., Powell, supra; Satz, supra; Geyer, supra; City of Fort Wayne v. Cameron* (1977), 267 Ind. 329, 370 N.E.2d 338; *Galbreath, supra.*

■ Coghill seeks to show substantial compliance with the notice requirements by Runnels' October 24, 1976 letter to Scott; she seems to argue that Runnels' letter incorporated by reference the substance of Runnels' earlier phone conversation with Scott, in which Runnels allegedly referred to "the date, time, place, conditions, and cause of the accident involved, and as much information as was available regarding the nature and extent of plaintiff's injuries." Coghill says that the letter, coupled with Scott's confirmatory memo and IPTC's independent investigation of the incident, amounted to substantial compliance with these statutes.

Coghill's contention that the post-collision interview between IPTC's representative and Coghill established substantial compliance is without merit. Our supreme court has declared that independently acquired knowledge or routine investigation of the occurrence by the governmental body is insufficient to show substantial compliance with the notice statute. *Powell, supra; Satz, supra; Geyer, supra; Cameron, supra; Batchelder v. Haxby* (1975), 167 Ind.App. 82, 337 N.E.2d 887. In *Batchelder,* Judge Garrard examined this sound rule, observing that its justification lies in the very purpose of the notice requirement, namely, to enable the governmental body to inquire into the occurrence "in the context that one is claiming municipal liability for injury." 167 Ind.App. at 85, 337 N.E.2d at 890. That purpose is not satisfied when, as here, the governmental entity, without notice of a potential claim, conducts a routine investigation of the incident.

Also unavailing is Coghill's argument that the correspondence between Runnels and Scott constituted substantial compliance with the notice requirements. She seeks sustenance in the supreme court's decision in *Galbreath, supra.* In that case, plaintiff was injured when she stepped into a hole in an Indianapolis street. On the day following the accident, plaintiff's husband, without the aid of an attorney, telephoned the switchboard operator at the City-County Building, who referred him to Lieutenant Gohman of the City Legal Department. Thereafter, plaintiff's husband sent two letters, one by registered mail, to Lieutenant Gohman; the letters furnished all the information required by the applicable notice statute. Furthermore, Lieutenant Gohman contacted plaintiff's husband several times to discuss settlement possibilities. All communication—oral and written—took place within the sixty-day period specified by the applicable notice statute. The court determined that plaintiff had substantially complied with the notice requirements, rejecting the city's contention that the correspondence fell short of substantial compliance because it was addressed to City Legal rather than to the mayor or the clerk, the designated officials under the statute.

Critical to the court's determination that City Legal could be viewed as the mayor's agent for purposes of receiving notice of claims against the city was its conclusion that plaintiff had fully satisfied the statutory requirements with respect to the form and content of notice. The court observed that

[t]he purpose of the notice statute being to advise the City of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary *where such purpose has in fact been satisfied.*

253 Ind. at 479–80, 255 N.E.2d at 229. In other words, the key to the court's finding of substantial compliance lay in its conviction that despite plaintiff's failure to notify the proper officials, she had nonetheless fulfilled the underlying purpose of the statute.

Thus, Coghill's vigorous assertion that under the logic of *Galbreath*, Scott had the authority to accept notice on behalf of IPTC ignores the essential distinction between that decision and the case at bar. The notice in *Galbreath complied fully* with the statute except insofar as it failed to inform the proper officials of Galbreath's claim. In contrast, the so-called notice in the instant case did no more than announce Runnels' legal representation of Coghill. The letter neither apprised IPTC of the accident and surrounding circumstances nor addressed the appropriate officials. In addition, it was delivered by first-class mail rather than by certified or registered mail or in person. Nor are the fatal defects in the notice cured by Coghill's bald assertion that it "incorporates by reference" the alleged substance of the earlier phone conversation between Runnels and Scott; the contents and delivery statutes clearly demand notice *in writing. Cf. Salem Community School Corp. v. Richman* (1980), Ind.App., 406 N.E.2d 269. Likewise unacceptable is Coghill's argument that Scott's written acknowledgment of Runnels' letter somehow remedied any deficiencies in the notice; the acknowledgment goes only to the issue of IPTC's actual knowledge of the incident which, as we have discussed previously, does not obviate plaintiff's affirmative duty to deliver a writing describing the claim.

The instant case is more closely analogous to *Satz, supra,* than to *Galbreath*. The plaintiff in *Satz* premised substantial compliance with the notice statute upon three factors: (1) the city's investigation of the incident, (2) a release which plaintiff executed during a meeting attended by an attorney representing the Indianapolis Police Department, and (3) a letter to the mayor in which plaintiff complained about the incident. The supreme court rejected plaintiff's arguments, citing *Geyer, supra,* and *Cameron, supra,* in support of its conclusion that the city's routine inquiry failed

to establish substantial compliance. The executed release did not show substantial compliance because it was not directed to the mayor or clerk, the designated officials under the statute; the court refused to extend the logic of *Galbreath* to encompass "the police department or any other department of city government acting without the knowledge and advice of the city legal department." 268 Ind. at 584, 377 N.E.2d at 625. Finally, with respect to plaintiff's letter to the mayor, the supreme court made the following observation:

> [T]he letter in question was no more than an ordinary complaint letter. It does not contain a description of the incident, the cause and conditions thereof, or the nature and extent of any injuries as required by IC § 18–2–2–1 [Burns' 1974] [the predecessor to the current statute]. This is far different from *Galbreath v. City of Indianapolis, supra,* where the letters contained all the necessary particulars. We therefore hold that Satz's letter is, as a matter of law, insufficient to constitute substantial compliance with the statute.

*Id.*

The rationale of *Satz* is relevant to the case at bar: Runnels' letter to Scott, like Satz's letter to the mayor, failed to approach the standard of the statute with respect to form and content. Because the correspondence between Runnels and Scott—like the correspondence in *Satz* and unlike the correspondence in *Galbreath* —did not satisfy the essential purpose of the notice statute, namely, to apprise the governmental entity of the accident and surrounding circumstances, we need not give attention to Coghill's argument that Scott was authorized to accept notice on behalf of IPTC.[3]

Going beyond the question of substantial compliance with the notice statute, Coghill finds summary judgment improper because

---

**3.** We assume, without deciding, that if Coghill had substantially complied with the contents and delivery statutes, Scott, a regular employee of IPTC, would have been authorized to accept notice on behalf of the Board of Directors of

IPTC under the rationale of *Galbreath* and *Satz*. Because an IPTC claims adjuster would appear to qualify as an agent of IPTC, he would seem to be an appropriate agent for receiving notice of a claim against IPTC.

Scott's actions (1) created an extension of the period for filing notice or (2) amounted to a waiver of the notice requirements or (3) created an estoppel to assert failure to comply with the notice requirements. To support extension, waiver, and estoppel Coghill apparently relies on certain events: Runnels' phone conversation with Scott, from which Runnels "understood" that he "should recontact Mr. Scott to discuss settlement of the claim when plaintiff had completed her medical treatment and we had necessary information on medicals and specials to evaluate the claim"; Scott's written acknowledgment of Runnels' letter of representation, which invited Runnels to contact Scott "when you wish to discuss this case"; and Runnels' phone conversation with Scott after the 180-day notice period had expired, during which the two allegedly discussed the damages aspect of the case.

*First,* as to Scott's conduct extending the notice period, it is true that our supreme court has determined that if a claimant is so "physically and mentally incapacitated" that he cannot comply with the notice requirements, he has a reasonable time after removal of his disability within which to file a notice of claim. *Cameron, supra,* 267 Ind. at 334, 370 N.E.2d at 341 (claimant suffered total paralysis as a result of incident giving rise to suit).[4] Ind. Code § 34–4–16.5–8 now codifies this rule.[5]

▌ To date, neither the courts nor the legislature have authorized an extension of the statutorily prescribed notice period for causes other than incompetence and neither shall we. As the record is devoid of facts indicating that Coghill could qualify as "incompetent" under the statute or as "physically and mentally incapacitated" under *Cameron,* the statutory period cannot be extended.

Turning to Coghill's claims of waiver and estoppel, it is well established that failure to give notice is a defense which the governmental entity must assert in its answer to plaintiff's complaint. *Gaither, supra; Powell, supra; Cameron, supra; Thompson v. City of Aurora* (1975), 263 Ind. 187, 325 N.E.2d 839; *Aaron, supra.* In this case, the defendants specifically raised Coghill's noncompliance with the statute, so there can be no claim of waiver based on failure to place the question of notice in issue. But did the defendants otherwise waive the notice requirement?

In *Delaware County v. Powell, supra,* the Indiana Supreme Court explained that a governmental unit can waive the notice requirement or be estopped to assert noncompliance with it by certain acts other than failure to raise the defense of noncompliance. The plaintiff in *Powell* sustained injuries when a Delaware County highway truck struck the auto in which she was riding. The county's insurer contacted Powell and made payments to her of approximately $19,000. The insurer admitted the county's liability and assured Powell that the county would "take care of everything." Ind., 393 N.E.2d at 190. After an agent of the insurer advised Powell to make final settlement of her claim because the two-year statute of limitations was about to expire, she consulted an attorney and filed notice with the Delaware County Commissioners. They rejected Powell's claim because it had not been delivered within the 180-day limit. Powell filed suit against the commissioners, the truck driver, and other county employees.

In its opinion, the supreme court recited the purpose of the notice statute and acknowledged plaintiff's affirmative duty to fulfill that purpose by delivering a writing setting forth his claim. But the court qual-

---

4. *See also Health and Hospital Corp. v. Gaither* (1979), Ind., 397 N.E.2d 589 (during incident leading up to suit, claimant suffered stroke which prevented him from communicating).

5. The statute provides that "[i]f a person is incompetent to give notice as required in section 6 [23–3–16.5–6] [covering claims against the state] or 7 [34–4–16.5–7] of this chapter, his claim is barred unless notice is filed within one hundred eighty [180] days after the incompetency is removed." Ind. Code § 34–4–16.5–2(3) defines an incompetent as one "who is under the age of eighteen [18] years or is incapable by reason of insanity, mental illness, or other incapacity of either managing his property or caring for himself or both[.]"

ified its recognition of plaintiff's duty by explaining that particular acts of the defendant could amount to a waiver of notice or create an estoppel to assert failure to comply with the notice requirement. The court emphasized that the critical issue is whether the governmental unit, by its conduct, has shown fulfillment of the statutory purpose:

> However, it appears that acts or conduct of the defendant or his agent as well as acts of the plaintiff could establish that the purposes of the statute were satisfied, that is, that the city was advised of the accident and that it promptly investigated the surrounding circumstances to determine its possible liability and to prepare a defense. Other facts proving preparation of a defense or admissions of liability; letters or writings involving descriptions of the incident, causes and conditions thereof or the nature and extent of injuries; promises; payments; settlements or other conduct or acts of the defendant or his agents or of the plaintiff, could be offered to prove that the purposes of the statute have been satisfied. When the purposes of the statute are fully satisfied, it is clear that the result is substantial compliance with the statute. When acts and conduct of the defendant or his agents have established that the purposes of the statute have been satisfied, these acts and conduct could constitute a waiver of notice or create an estoppel.

Ind., 393 N.E.2d at 192 (emphasis supplied).[6]

In *Powell*, various affirmative acts of the defendant pointed to fulfillment of the statutory purpose, thus generating genuine issues as to the material facts of waiver and estoppel: The county's insurer initiated contact with Powell, admitted the county's liability, promised to "take care of everything," and made substantial payments in satisfaction of Powell's claim. Not so here, where by contrast, communication was initiated neither by the governmental entity itself nor even by the plaintiff acting without the aid of an attorney. Instead, Runnels, a lawyer, instituted contact with IPTC.[7] Nothing in the ensuing dialogue between Runnels and Scott can reasonably be construed as a promise, settlement, or other act on the part of IPTC which might demonstrate satisfaction of the statutory purpose. Indeed, Scott's only affirmative acts were 1) to write a memo, at Runnels' request, acknowledging receipt of Runnels' letter of representation and inviting him to contact Scott later; and 2) to telephone Runnels, again at Runnels' request, to "talk over the damages aspect of the case." These acts—as distinguished from the acts which gave rise to legitimate claims of waiver and estoppel in *Powell*—fail to show satisfaction of the purpose of the notice statute. In short, this case is devoid of facts bringing it within the holding in *Powell*.

Another factor prevents us from finding estoppel or waiver under the facts of this case. The concepts of estoppel and waiver are technically distinct. "Equitable estoppel" arises when

> (1) a false representation or concealment of material facts [is] made with actual or constructive knowledge of the true state of facts; and (2) *the representation is made to one who is without knowledge or*

---

**6.** We wish to point out that the supreme court's reference in *Powell* to "substantial compliance" in the context of a claim of waiver or estoppel differs from its reference to "substantial compliance" in the context of a claim of substantial compliance with the statutory notice requirements. In analyzing a claim of waiver of or estoppel to assert failure to comply with the notice statute, we must focus on the conduct of the *governmental entity*; the crucial question is whether the governmental unit had actual knowledge of and investigated the accident and surrounding circumstances.

In addition, acts of the governmental unit must have induced the plaintiff to believe that formal notice was unnecessary. *See Powell, supra.* By contrast, when we examine a claim of substantial compliance with the notice statute, we direct our attention toward acts of the *plaintiff*; the critical inquiry is whether the plaintiff has fulfilled his affirmative duty to deliver a writing describing the claim.

**7.** We assume, without deciding, that Scott was an appropriate agent to receive notice of a claim on behalf of IPTC. *See note 3, supra.*

*reasonable means of knowing the true facts* with the intent that he or she will rely upon it; and (3) the second party must rely or act upon such representation to his or her detriment.

*Kline v. Kramer* (1979), Ind.App., 386 N.E.2d 982, 987 (emphasis supplied). *Accord, Sheraton Corp. of America v. Kingsford Packing Co., Inc.* (1974), 162 Ind.App. 470, 319 N.E.2d 852. As the italicized language indicates, the doctrine is inapplicable when both parties have equal knowledge of or access to the facts. *Indiana State Highway Commission v. Pappas* (1976), 169 Ind. App. 611, 349 N.E.2d 808; *Matthews v. Bowser* (1964), 135 Ind.App. 513, 195 N.E.2d 494. "Waiver," by contrast, is an intentional relinquishment of a known right. *Lafayette Car Wash, Inc. v. Boes* (1972), 258 Ind. 498, 282 N.E.2d 837. Its existence is determined by the conduct of the party holding the right without reference to acts of the other party. *Pappas, supra; City of Evansville v. Follis* (1974), 161 Ind.App. 396, 315 N.E.2d 724.

■ Despite the technical differences, courts in this state have used the terms "estoppel" and "waiver" interchangeably in certain circumstances. *Follis, supra; Johnson v. Spencer* (1911), 49 Ind.App. 166, 96 N.E. 1041. The supreme court did not define the concepts of waiver and estoppel in *Powell.* But other jurisdictions examining claims of waiver and estoppel in the notice requirement context have used both terms to mean "estoppel." Thus, one who claims estoppel *or* waiver in the notice statute situation must be "without knowledge or reasonable means of knowing the true facts." *Kline, supra.* In other words, he must have *reasonably* relied upon the other party's representation:

> The sum of the holdings in recent years has been that when responsible agents or officials of a city have actual knowledge of the occurrence which causes injury and they pursue an investigation which reveals substantially the same information that the required notice would provide, and they thereafter follow a course of action which would *reasonably lead* a

claimant to conclude that a formal notice would be unnecessary, then the filing of such a notice may be said to be waived. If the claimant, as a result of such municipal conduct, in good faith fails to act, or acts thereon to his disadvantage, then an estoppel against the requirement of the notice may be said to arise.

> A mere investigation by agents of a city standing alone will not necessarily have the indicated effect. *The waiver or estoppel occurs when there is an investigation followed by action in relation to the claimant that would lead a reasonable person to conclude that further notice is unnecessary* or causes such person to act or fail to act to his injury.

*Rabinowitz v. Town of Bay Harbor Islands* (Fla.1965), 178 So.2d 9, 12–13 (emphasis supplied). *See also City of Montgomery v. Weldon* (1967), 280 Ala. 463, 195 So.2d 110; *Anske v. Borough of Palisades Park* (1976), 139 N.J.Super. 342, 354 A.2d 87; *LaBriola v. Southeastern Pennsylvania Transportation Authority* (1974), 227 Pa.Super. 305, 323 A.2d 9.

■ Thus, assuming for the sake of argument only that the other elements are present, this is still not a proper case for invoking the doctrine of estoppel or waiver; Coghill does not claim—and indeed cannot claim—that attorney Runnels was "one . . . without knowledge or reasonable means of knowing" that further notice was necessary. *Kline, supra.*

We add that while Coghill has chosen to couch this issue in terms of the existence of genuine issues of material fact as to compliance with the notice statute, extension, waiver, and estoppel, we can detect no factual controversy and have treated the issue in terms of the applicable law—as have the parties.

ISSUE TWO—Was the trial court's entry of summary judgment barring Coghill's claim against Badger improper because it was predicated upon an incorrect application of Ind. Code § 34–4–16.5–5(a)?

PARTIES' CONTENTIONS—Coghill claims that even if the trial court's entry of summary judgment in favor of IPTC was

proper, its entry of summary judgment in favor of Badger was improper because it was based upon an incorrect application of Ind. Code § 34–4–16.5–5(a), which provides that

[a] judgment rendered with respect to or a settlement made by a governmental entity bars an action by the claimant against an employee whose conduct gave rise to the claim resulting in that judgment or settlement.

Coghill asserts that the term "judgment" does not encompass grants of summary judgment based on the claimant's failure to file notice with the governmental entity within the prescribed limit. Badger and IPTC contend that the trial court's application of subsection 5(a) was proper under the facts.

CONCLUSION—The trial court correctly applied subsection 5(a) to a summary judgment in favor of IPTC based on Coghill's failure to comply with the notice statute.

Coghill concedes that a literal interpretation of subsection 5(a) would preclude her action against Badger. She asserts, however, that such an interpretation would be incompatible with provisions of the Indiana Constitution, applicable case law, and other portions of the tort claims statute.

The constitutionally based claim can be disposed of in short order. Coghill's brief baldly states that a literal construction of subsection 5(a) would "confer special privileges and immunities on employees of governmental entities and would deny claimant's due course of law in violation of Article I, Sections 12 and 23 of the Constitution of the State of Indiana[,]" but fails to cite any authority in support. We will not pursue such will-o'-the-wisps. The argument is waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

Coghill relies on *Geyer, supra,* and *England v. City of Richmond* (7th Cir. 1969), 419 F.2d 1156 (applying Indiana law), for the proposition that the notice statute does not apply to individual employee-tortfeasors. What Coghill seems to disregard, however, is that *England* was decided prior to the enactment of subsection 5(a). Likewise, the

trial in *Geyer* took place before subsection 5(a) became law. Hence, these cases are not persuasive.

Another facet of Coghill's argument is that a literal reading of subsection 5(a) would violate "the obvious intent and purpose of the tort claims statute." Without enlightening us as to the "obvious" aim of the statute, Coghill makes reference to other portions of the tort claims act as leading unavoidably to the conclusion that the operative term "judgment" in subsection 5(a) refers to "a judgment on the merits" *only* rather than to *any* judgment. We can reach no such conclusion by reading any or all of the provisions of the tort claims act. In the first place, a summary judgment is a final appealable judgment on the merits. *See* C. Wright & A. Miller, Federal Practice and Procedure § 2713, at 405 (1973). As such, it should be given the same treatment and effect as any judgment unless there is something in the tort claims act indicating that a summary judgment in favor of a governmental unit based on failure to give the required notice is not a "judgment" which bars an action against an individual employee. Before examining other sections of the act, we pause to review certain maxims of statutory construction.

When statutory language admits of more than one interpretation, it is our duty to ascertain and give effect to the intent of the legislature. *Ott v. Johnson* (1974), 262 Ind. 548, 319 N.E.2d 622; *State ex rel. Bynum v. LaPorte Superior Court* (1973), 259 Ind. 647, 291 N.E.2d 355; *State v. Moles* (1975), 166 Ind.App. 632, 337 N.E.2d 543. In determining legislative intent, we must examine the entire statute, prior versions, changes made, and the reasons for making them. *Bowman v. State* (1979), Ind.App., 398 N.E.2d 1306; *Livingston v. Consolidated City of Indianapolis* (1979), Ind.App., 398 N.E.2d 1302; *Merimee v. Brumfield* (1979), Ind.App., 397 N.E.2d 315. We are bound "to prevent absurdity and hardship and to favor the public convenience." *Walton v. State* (1980), Ind., 398 N.E.2d 667, 671 (quoting *Loza v. State* (1975), 263 Ind. 124, 325 N.E.2d 173). Otherwise stated, we may

consider potential adverse consequences of a particular interpretation. *Bynum, supra; Allen County Department of Public Welfare v. Ball Memorial Hospital Association* (1969), 253 Ind. 179, 252 N.E.2d 424; *Flynn v. Klineman* (1980), Ind.App., 403 N.E.2d 1117.

Another fundamental rule of statutory construction is that statutes relating to the same subject matter must be construed together. *Schrenker v. Clifford* (1979), Ind., 387 N.E.2d 59; *State ex rel. State Board of Tax Commissioners v. Daviess Circuit Court* (1967), 249 Ind. 580, 230 N.E.2d 761; *Connell v. City of Logansport* (1979), Ind.App., 397 N.E.2d 1058. Moreover, whenever possible, statutes passed during the same legislative session should be interpreted as harmonious, so as to give effect to each. *State ex rel. Indiana State Board of Finance v. Marion County Superior Court* (1979), Ind., 396 N.E.2d 340. Finally, specific statutory provisions take priority over non-specific provisions. *Ezzell v. State* (1965), 246 Ind. 268, 205 N.E.2d 145; *Barr v. State* (1980), Ind.App., 400 N.E.2d 1149; *Gonser v. Board of Commissioners* (1978), Ind.App., 378 N.E.2d 425.

Ind. Code § 34–4–16.5–3 [8] simply immunizes a governmental unit or employee acting within the scope of his employment from liability for losses resulting from fourteen causes. Apparently, Coghill would have us interpret section 3 as a legislative enumeration of the *only* circumstances under which a governmental entity or individual employee can be exempted from tort liability. The argument is without merit. It is true that section 3 does not expressly discharge a governmental body or employee from liability for the misperformance of a ministerial function. Nevertheless, assuming for purposes of argument that Badger was carrying out a ministerial duty,[9] liability does not automatically ensue. Examining the tort claims act as a whole, as we must, we find that the notice statute directs us to inquire into Coghill's compliance with its requirements. Because Coghill failed to file notice, her claim is barred *irrespective of the fact that her loss stemmed from an act not listed in section 3.* Hence, any assertion that section 3 delimits governmen-

**8.** Ind. Code § 34–4–16.5–3 provides:

Immunity from liability.—A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

(1) the natural condition of unimproved property;

(2) the condition of a reservoir, dam, canal, conduit, drain, or similar structure when used by a person for a purpose which is not foreseeable;

(3) the temporary condition of a public thoroughfare which results from weather;

(4) the condition of an unpaved road, trail, or footpath, the purpose of which is to provide access to a recreation or scenic area;

(5) the initiation of a judicial or administrative proceeding;

(6) the performance of a discretionary function;

(7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment;

(8) an act or omission performed in good faith and without malice under the apparent authority of a statute which is invalid, if the employee would not have been liable had the statute been valid;

(9) the act or omission of someone other than the governmental entity employee;

(10) the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law;

(11) failure to make an inspection, or making an inadequate or negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property complies with or violates any law or contains a hazard to health or safety;

(12) entry upon any property where the entry is expressly or impliedly authorized by law;

(13) misrepresentation if unintentional; or

(14) theft by another person of money in the employee's official custody, unless the loss was sustained because of the employee's own negligent or wrongful act or omission.

**9.** A ministerial act has been defined as "one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done." *Galey v. Board of Commissioners* (1910), 174 Ind. 181, 183, 91 N.E. 593, 594.

tal and individual immunity begs the ultimate question; we must look to the specific language of section 5 to resolve the issue of Badger's liability.

Coghill says that subsections 5(b) and 5(c) constitute express authority for holding Badger individually liable regardless of whether IPTC can be held responsible for her injuries. Subsection 5(b) provides in pertinent part that

> the governmental entity shall pay any judgment, compromise, or settlement of a claim or suit against an employee when the act or omission causing the loss is within the scope of his employment, regardless of whether the employee can or cannot be held personally liable for the loss and when . . . the governing body of the political subdivision, in the case of a claim or suit against an employee of a political subdivision, determines that paying the judgment, compromise, or settlement is in the best interest of the governmental entity. (Emphasis supplied).

Subsection 5(c) specifies that

> [t]he governmental entity shall pay all costs and fees incurred by or on behalf of an employee in defense of a claim or suit for a loss occurring because of acts or omissions within the scope of his employment, regardless of whether the employee can or cannot be held personally liable for the loss. (Emphasis supplied).

A careful reading of these two subsections with subsection 5(a) leads to no such conclusion. The mere fact that subsections 5(b) and 5(c) contemplate that an employee can so conduct himself as to incur personal liability is in no way inconsistent with subsection (a), barring an action against him when, as here, a judgment has been entered with respect to the governmental unit. Coghill's claim is invalidated by the positively stated legislative intent to insulate the employee from liability under most circumstances.

Prior to the passage of chapter 16.5 the only statutory provision dealing with tort actions against governmental entities was Ind. Code § 18–2–2–1,[10] concerning notice of claims. In enacting chapter 16.5, the legislature sought to establish the boundaries of tort liability of governmental entities and their employees. Section 5 specifically demarcates the liability of public employees. That the legislative intent was to constrict individual liability, not expand it, is apparent from the very title of the section—"*Immunity* of public employees." Subsection 5(a) makes the liability of a public employee whose conduct gave rise to a claim against a governmental entity coextensive with that of the governmental entity itself; stated succinctly, if the governmental body is released from liability, so is the employee. That is the thrust of the entire act and there is no statement or inference in subsections 5(b) and 5(c) to the contrary. In fact, these subsections reinforce the intended protection of government employees by providing that if suit is brought against the employee *alone*, rather than against the governmental unit and employee jointly, the governmental unit may nevertheless elect to pay "any *judgment, compromise, or settlement* of a claim . . . against [the] employee" and the government must pay the employee's defense costs.[11] The use of language in subsection 5(b) authorizing payment of any loss suffered by a government employee by way of "judgment, compromise, or settlement" and in subsection 5(c) requiring payment of his defense costs is certainly consistent with treating a summary judgment in favor of the governmental unit based on failure to give notice as a "judgment" barring an action against the employee.

The most that can be said for interpreting these subsections as allowing a separate

---

10. Repealed by Acts 1974, P.L. 142, § 3.

11. Subsection 5(d), which specifies in part that "[n]othing contained in this chapter . . . shall be construed . . . as consent by the State of Indiana or its employees to be sued in any federal court, or as consent to be sued in any state court beyond the boundaries of the State of Indiana[,]" is also designed to insulate employees from tort liability; the individual employee's amenability to suit in federal or sister state courts is made coextensive with that of his employer.

action against an employee after a summary judgment has been entered because of failure to give the governmental unit notice is that the notice statute does not require that notice also be given to the employee. But construing all the provisions of the tort claims act together so as to give effect to each, we can only conclude that subsection 5(a), the specific section concerning the barring of actions, precludes an action against a government employee even though the judgment with respect to the governmental entity is a summary judgment based on failure to give notice.

If a "settlement" bars an action against an employee, logically any judgment disposing of the claim should also bar an action. It would be rank distortion of subsection 5(a) to remove from its ambit summary judgments in favor of the governmental unit based on failure to give notice. There is no reason to do so by virtue of the statutory purpose, any rule of statutory construction or any of the provisions of the tort claims act.

 To sum up, the unmistakable meaning of the three subsections of section 5, when read together, is to bar an action against a government employee functioning within the scope of his employment for a loss no matter how resolved with respect to the governmental entity, whether by settlement or by judgment. The recognition in subsections 5(b) and (c) of the possibility that an employee may be personally liable merely emphasizes the legislative intent of subsection (a) that he be held harmless when judgment has been rendered with respect to or settlement has been made by the governmental body. It is not an indicator that such potential personal liability removes the bar when the judgment rendered with respect to the governmental unit is a summary judgment based on failure to give notice. Subsection 5(a) cannot be circumvented by merely speculating that under some conceivable circumstances an employee causing loss while acting within the scope of his employment may be subject to personal liability. The bar protects him, or her, when settlement has been consummated or judgment rendered as to the governmental entity, irrespective of employee fault or whether notice was or was not given to the governmental entity.

We realize that our decision is contrary to the one reached by the third district in *Burks v. Bolerjack* (1980), Ind.App., 411 N.E.2d 148. The court in *Burks* examined subsection 5(a) in relation to other provisions of the tort claims act and allowed a separate action against a government employee. Nevertheless, we believe our analysis harmonizes and gives effect to each of the various sections of the act in accordance with legislative intent. In reaching our conclusion, we have also afforded due regard to the principle of statutory construction that a specific statutory provision (subsection 5(a)) takes priority over non-specific provisions.

Judgment affirmed.

SHIELDS, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting:

I would reverse the summary judgment because a genuine issue exists with respect to whether the conduct and representations of The Indianapolis Public Transportation Corporation (IPTC) constitute waiver of the right to assert non-compliance with the notice statute. For this reason I do not reach the issue concerning application of I.C. 34-4-16.5-5(a).

The trier of fact should be permitted to weigh the evidence recited by the majority here. A reasonable trier of fact, having done so might well determine that the various written communications and conversations between Coghill's attorney and the claims adjuster for IPTC fulfilled the entire purpose of the notice requirement and further that the conduct and representations by the claims adjuster were sufficient to permit Coghill to reasonably believe that formal notice was unnecessary. *Delaware County v. Powell* (1979) Ind., 393 N.E.2d 190; *City of Lubbock, Texas v. Green* (5th Cir. 1953) 201 F.2d 146; *Barber-Scotia College, Inc. v. City of New York* (5 D.N.Y.

1975) 390 F.Supp. 525; *City of Montgomery v. Weldon* (1967) 280 Ala. 463, 195 So.2d 110; *Rabinowitz v. Town of Bay Harbor Islands* (1965) Fla., 178 So.2d 9; *Tillman v. City of Pompano Beach* (1957) Fla., 100 So.2d 53; *Anske v. Borough of Palisades Park* (1976) 139 N.J.Super. 342, 354 A.2d 87; *LaBriola v. Southeastern Pennsylvania Transportation Authority* (1974) 227 Pa.Super. 305, 323 A.2d 9.

We are not here concerned with whether Coghill had knowledge of the notice requirement. Rather we are concerned with whether the conduct and representations were such as to permit a reasonable person to believe that the governmental unit was foregoing rigid compliance with that requirement and was in fact proceeding to deal with the claim itself. As heretofore expressed, I believe the trier of fact should be given an opportunity to answer that question.