Herb **BUDDEN**, Bonnie **Budden** and Christine **Muller**, Individually, and as Representatives of a Class of Teachers, Appellants–Plaintiffs,

v.

The **BOARD OF SCHOOL COMMISSIONERS OF THE CITY OF INDIANAPOLIS**, Ash Financial Group, Inc., Shirl Gilbert, Individually, and Brent W. Ash, Individually, Appellees–Defendants.

No. 49A05–9609–CV–380.

Court of Appeals of Indiana.

June 10, 1997.

Rehearing Denied Sept. 3, 1997.

Michael K. Sutherlin, Patricia Orloff Grow, Indianapolis, for Appellants–Plaintiffs.

Reuben B. Hill, Indianapolis, Donald L. Dawson, Robert M. Kelso, Robert J. Smith, Kightlinger & Gray, Indianapolis, for Appellees–Defendants.

## OPINION

SHARPNACK, Chief Judge.

This case is before us on interlocutory appeal. Herb Budden, Bonnie Budden, and Christine Muller (collectively "appellants") appeal the entry of partial summary judgment and denial of their class certification in favor of defendants-appellees, the Board of School Commissioners of the City of Indianapolis ("IPS"), Ash Financial Group, Inc. ("AFG"), Shirl Gilbert, and Brent W. Ash (collectively "appellees"). The appellants challenge both rulings.

We affirm.

The facts most favorable to the appellants, the nonmovants, follow.[1] The appellants are employed by IPS as teachers. As IPS employees, they participated in a tax sheltered annuity program ("TSA") and a mutual fund 403(b)(7) investment plan ("investment plan") in which money was deducted from their wages and invested. On July 25, 1991, IPS entered into an agreement with AFG to serve as the administrator for the TSA and investment plan. Under the agreement, AFG was required to distribute the appellants' money received from IPS into a TSA or investment plan held by one of the insurance or investment companies specified in the agreement. The agreement was to continue until June 30, 1994. Thereafter, the agreement would continue year to year unless either party provided written notice of termination within sixty days from the expected termination date.

In 1992, IPS began to receive complaints regarding AFG's administration of the funds. The complaints concerned AFG's failure to timely forward the IPS deductions to the investment companies. On June 23, 1992, Donald Barr, the assistant business manager for IPS, sent Ash, AFG's president, a letter stating in part that "[o]nce again I have received complaints concerning the sending of monies to different companies for our employee's [sic] TSA plans. This time, as opposed to earlier complaints, this round appears to be a mortal wound." Record, p. 38.

On November 25, 1992, Barr sent a memorandum to Rodney Black, IPS' Business Manager, regarding AFG's administration of the funds. In the memorandum, Barr summarized the problems with AFG's administration. Barr also indicated that he had begun to oversee AFG's administration and concluded that with supervision, AFG's performance "appears to be better." Record, p. 217. On March 24, 1994, IPS sent written notice to AFG to terminate the contract effective June 30, 1994.

In September of 1994, IPS' superintendent, the Board, and representatives of the union directed Donald Ragland, IPS' internal auditor, to gather information from the investment companies with regard to whether there were "any missing funds that they may discover." Record, p. 219. This investigation was prompted because they "had had some indication from a couple of the annuity companies that payments were not being made .... [and] were interested in trying to determine how many people were affected, how many companies were affected." Record, p. 220.

On September 21, 1994, Duncan Pritchett, the interim IPS superintendent, composed a letter to IPS employees. The letter provided in part as follows:

"It is my unfortunate responsibility to inform you of a potential problem which may impact your voluntary employee annuity account.

We have reason to believe that [AFG] which administered [TSA] accounts for approximately 941 IPS employees from July, 1991 through June 30, 1994, failed to distribute approximately $350,000 in funds deducted from employees' salaries to the insurance/annuity companies selected by the employees.

At this time, IPS does not know how many of the employees whose TSA payments were being serviced through AFG are affected. IPS has begun an examination of AFG's records to ascertain the number and identity of the employees...."

---

1. Initially, we note that it was particularly burdensome to determine which evidence was designated and considered by the trial court for purposes of the summary judgment motion. In their brief, the appellants provided a twelve page statement of the facts. However, many of the assertions in the appellants' statement of facts were based upon evidence which was struck by the trial court. The appellees provided their own statement of facts, but they too relied upon evidence which was struck. We remind counsel that they are obligated by the appellate rules to file a statement of the case setting forth "the course of proceedings relevant to the issues presented for review," Ind. Appellate Rule 8.3(A)(3), (B), and a statement of the facts "relevant to the issues presented for review, with appropriate references to the record." App.R. 8.3(A)(4), (B). The parties' failure to accurately present that evidence which was designated for the summary judgment and not subsequently stricken by the trial court substantially impeded our consideration of the issues presented.

Record, p. 254. In December of 1994, a decision was made to turn the investigation over to the U.S. Attorney's Office and the Department of Insurance.

On January 27, 1995, counsel for the appellants filed a tort claim notice to advise "that our office has been retained by Herb Budden, Bonnie Budden, and Christine Muller, teachers in the Indianapolis Public School system, and potentially all teachers who had 403 funds embezzled by [AFG] to represent their interests in any claims they may have against the Indianapolis Public School Corp and [AFG]." Record, p. 98.

On June 13, 1995, the appellants filed a class action complaint for damages alleging that the appellees "engaged in negligent actions and intentional wrongdoing with resulted in the theft of funds that the plaintiffs placed in the mutual funds pension plan." Record, p. 19. The first count of the complaint alleged that IPS negligently selected AFG and Ash as the administrator, failed to control the conduct of AFG and Ash, and breached a fiduciary duty to the appellants for negligently selecting and retaining AFG as the administrator. The second count alleged that Gilbert, the former superintendent of IPS, failed to share information with appellants and misrepresented the status and competency of AFG and Ash to IPS. The third count alleged that AFG and Ash embezzled and stole approximately $400,000 from the appellants.

On November 14, 1995, the appellants filed a motion for certification of class pursuant to Ind. Trial Rule 23. On November 30, 1995, the appellees filed a brief in opposition to the motion for class certification. On December 4, 1995, the defendants filed a motion for partial summary judgment, along with a designation of evidence and a memorandum in support of the motion.

On December 19, 1995, the trial court held a hearing on the appellants' motion to certify a class and later issued the following preliminary ruling:

"The Court having heard evidence and argument on Plaintiffs' Motion to Certify Class Action finds that Plaintiffs have complied with Trial Rule 23. The basic problem with Plaintiffs [sic] motion is the adequacy of notice under the Indiana Tort Claims Act.

The Court finds that at the present posture of the case, the Plaintiffs are entitled to proceed with the class action. However, the Court will have to conduct a hearing on Defendants' Motion for Partial Summary Judgment before the certification issue is finally resolved."

Record, p. 171.

On May 10, 1996, the appellants filed a designation of evidence and response in opposition to the appellees' motion for partial summary judgment. On May 16, 1996, the appellees filed a supplemental designation of evidence and a motion to strike portions of the appellants' designation of evidence.[2] On May 23, 1996, the appellants filed a supplemental designation of evidence. On the following day, before the trial court held a hearing on the motion for partial summary judgment, the appellees filed a motion to strike the appellants' supplemental designation of evidence. On July 18, 1996, the trial court issued the following order:

"(1) Defendant's [sic] Motion to Strike Plaintiffs' Supplemental Designation and Tender of Evidence of affidavits is granted. Likewise Defendant's [sic] Supplemental Designations and Tender of Evidence is stricken.

\*   \*   \*   \*   \*   \*

(3) Plaintiff's [sic] Motion to Certify this case as a class action is denied. This cause . . . will proceed as a claim by the plaintiffs Herb Budden, Bonnie Budden and Christine Mueller. [sic] (Perhaps, the stringent notice requirements as set out in *Alonso* [*v*]*s. City of Hammond,* 648 N.E.2d 1221, should be revisited by the Court of Ap-

---

2. The Chronological Case Summary ("CCS") does not reflect that the trial court ruled on the motion to strike. However, a CCS entry on May 24, 1996, shows that the trial court granted in part the appellees' May 10, 1996, oral objection

to portions of the appellants' designated evidence. The CCS entry also states that the trial court struck four of the exhibits designated by the appellants.

peals. However, this Court is bound to follow the ruling of the Court of [A]ppeals.) (4) The Court ... finds that no genuine issue of material facts exists and that defendants' Motion for Partial Summary Judgement [sic] should be and is hereby granted as a matter of law."

Record, p. 346. The appellants now appeal.

### I.

■ The first issue raised is whether the trial court properly granted the appellees' motion for partial summary judgment. In reviewing the entry of partial summary judgment, we apply the same standard as the trial court, and we must reverse the judgment if an unresolved issue of material fact appears in the record or if the law was incorrectly applied to undisputed facts. *Winona Mem. Found. v. Lomax*, 465 N.E.2d 731, 733 (Ind.Ct.App.1984).

The primary basis of the appellees' motion was that the appellants, as class representatives for "potentially all teachers who had 403 funds embezzled by [AFG]," record, p. 98, failed to satisfy the notice requirements under the Indiana Tort Claims Act ("ITCA"). Specifically, the appellees claimed the notice failed to include the specific number and names of the potential class plaintiffs. In addition, the appellees objected to the appellants' failure to indicate that the potential class plaintiffs authorized the appellants to submit notice on their behalf. In response, the appellants asserted that their complaint should survive summary judgment under the theories of estoppel and substantial compliance.

Under the ITCA, the plaintiff must provide written notice within 180 days after the alleged loss of a claim to the defendant before initiating suit. Ind.Code § 34–4–16.5–7.[3] The notice must describe the facts upon which the claim is based and include "the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages

sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice." I.C. § 34–4–16.5–9.

The purpose underlying the notice requirement is well established. The purpose is "to inform the city officials with reasonable certainty of the time, place, cause and nature of the accident and the general nature and extent of the injuries so that the city might investigate all facts pertaining to its liability and prepare its defense, or adjust the claim." *Galbreath v. City of Indianapolis*, 253 Ind. 472, 477, 255 N.E.2d 225, 228 (1970) (quoting *Aaron v. City of Tipton*, 218 Ind. 227, 230–231, 32 N.E.2d 88, 89 (1941)).

■ Generally, the failure to comply with the notice requirements will subject a claim to summary judgment. *Allen v. Lake County Jail*, 496 N.E.2d 412, 414 (Ind.Ct.App. 1986), *reh'g denied*. However, not all technical violations of the notice requirements are fatal because Indiana recognizes the theories of substantial compliance and estoppel, both of which protect a claim from summary judgment. *Id.*

■ When addressing a claim of substantial compliance, we consider whether the plaintiff has satisfied the duty to provide a written notice of a claim. The primary focus is the extent to which the form and content of the notice complies with the ITCA's requirements. *Id.* at 415 n. 3. In contrast, a claim of estoppel focuses on the defendant's representations to the plaintiff which induced the plaintiff to reasonably believe that formal notice was unnecessary. *Id.* We will consider the applicability of these theories in turn.

### A. *Estoppel*

■ The leading case on the theory of estoppel is *Delaware County v. Powell*, 272 Ind. 82, 393 N.E.2d 190 (1979). In *Powell*, the plaintiff was severely injured when she was struck by a Delaware County Highway truck. The county's insurance carrier contacted Powell and paid her approximately

---

3. Under the statute, the notice must be filed with the governing body of the political subdivision of which the claim is against and the Indiana political subdivision risk management commission.

I.C. § 34–4–16.5–7. In this case, the notice was mailed to the president of the IPS Board, the acting superintendent of IPS, and to the risk management commission.

$19,000. Powell alleged that the insurance carrier admitted the county's liability and stated that "they would take care of everything," but the insurance carrier denied making those admissions. *Id.* at 83, 393 N.E.2d at 190. About eighteen months later, Powell filed a written notice of claim which was rejected because it exceeded the 180 day filing limit. Powell subsequently sued, and the defendants filed a motion for summary judgment. The motion was denied because the trial court found that material issues of fact existed as to whether the defendants' conduct created an estoppel.

We reversed because Powell had not filed *any* written notice of her claim until nearly two years after the incident. *Powell,* 178 Ind.App. 309, 382 N.E.2d 958, 962 (1978), *vacated,* 272 Ind. 82, 393 N.E.2d 190. We specifically held that estoppel may not be properly raised to show good cause for non-compliance with the notice requirements. *Id.* 382 N.E.2d at 962–963. "Where no written notice is given … the plaintiff has simply failed to meet the required procedural precedent, and the acts of the [defendant] which are done in furtherance of the investigation and settlement of the matter cannot give rise to estoppel or waiver." *Id.* at 962. In vacating our opinion, the supreme court found that proof of estoppel should have been presented to the trial court:

> "[I]t appears that acts or conduct of the defendant or his agent as well as acts of the plaintiff could establish that the purposes of the statute were satisfied, that is, that the city was advised of the accident and that it promptly investigated the surrounding circumstances to determine its possible liability and to prepare a defense. Other facts proving preparation of a defense or admissions of liability; letters or writings involving descriptions of the incident, causes and conditions thereof or the nature and extent of injures; promises; payments; settlements or other conduct or acts of the defendant or his agents or of the plaintiff, could be offered to prove that the purposes of the statute have been satisfied. When the purposes of the statute are fully satisfied, it is clear that the result is substantial compliance with the statute. When acts and conduct of the defendant or

his agents have established that the purposes of the statute have been satisfied, these acts and conduct could constitute a waiver of notice or create an estoppel."

*Powell,* 272 Ind. at 85, 393 N.E.2d at 192.

More recently, we have set forth the requirements for applying the estoppel doctrine:

> "The sum of the holdings in recent years has been that when responsible agents or officials of a city have actual knowledge of the occurrence which causes injury and they pursue an investigation which reveals substantially the same information that the required notice would provide, and they thereafter follow a course of action which would *reasonably lead* a claimant to conclude that a formal notice would be unnecessary, then the filing of such a notice may be said to be waived. If the claimant, as a result of such municipal conduct, in good faith fails to act, or acts thereon to his disadvantage, then an estoppel against the requirement of the notice may be said to arise.
>
> A mere investigation by agents of a city standing alone will not necessarily have the indicated effect. *The waiver or estoppel occurs when there is an investigation followed by action in relation to the claimant that would lead a reasonable person to conclude that further notice is unnecessary or causes such person to act or fail to act to his injury.*"

*Coghill v. Badger,* 418 N.E.2d 1201, 1209 (Ind.Ct.App.1981) (original emphasis) (quoting *Rabinowitz v. Town of Bay Harbor Islands,* 178 So.2d 9, 12–13 (Fla.1965)), *reh'g denied.* In *Coghill,* we concluded that estoppel did not apply because she did not and could not assert that her attorney was without knowledge or reasonable means to know further notice was necessary. *Coghill,* 418 N.E.2d at 1209.

Applying these principles to the designated evidence, we find the appellants demonstrated that the appellees knew the time, place, cause, nature of the accident, and the general nature of the injuries. The designated evidence also shows that the appellees investigated all of the facts. However, the desig-

nated evidence does not demonstrate that the appellees investigated the facts *to determine their own liability* or to prepare a defense, which is the purpose of the notice requirement. *See Galbreath*, 253 Ind. at 477, 255 N.E.2d at 228. At most, the designated evidence shows that the appellees undertook an investigation to prepare a case against AFG directly or as a representative for the IPS employees. The evidence does not establish that the appellees undertook an investigation of all the facts to determine their own liability in the matter or to prepare a defense. Without evidence to show that the purposes underlying the notice requirements have been satisfied, that is, the appellees investigated the facts to determine their own liability and to prepare a defense, the estoppel doctrine is not applicable. *See Powell*, 272 Ind. at 85, 393 N.E.2d at 192.

■ As a separate matter, the appellants contest the trial court's ruling to strike certain evidence which was designated in the motion in opposition to summary judgment. This evidence, the appellants continue, shows that the elements of estoppel have been satisfied. As previously noted, we cannot determine the precise reason that the trial court struck the evidence.[4] However, even assuming *arguendo* that the trial court improperly struck the evidence, we disagree with the appellants' assertion that the stricken evidence establishes the elements of estoppel.

The most helpful piece of evidence that was stricken by the trial court was exhibit G, the complaint filed by IPS against Ash and AFG. In the complaint, which proceeded on theories of breach of contract, breach of fiduciary duty, and negligence, IPS stated that "IPS believes that it may have some responsibility to its employees for any damages suffered by the employees as a result of AFG's or Ash's conduct regarding the Disbursements." Record, pp. 237, 241. This statement could be construed as an admission by appellees that they were liable to the employees. However, it does not satisfy the requirement that the defendant pursued a course of action which reasonably led the plaintiff to believe that formal notice was unnecessary. Because none of the evidence designated by the appellants, whether admitted or stricken, established that the appellants knew IPS filed a suit against AFG and Ash, we cannot infer that the appellants were reasonably led by the defendants' course of action to believe that formal notice was unnecessary. As such, all of the elements of estoppel have not been established and the appellees were not estopped from asserting the appellants' failure to submit the ITCA notice in the motion for partial summary judgment. Therefore, the trial court properly found as a matter of law that the estoppel doctrine did not apply.

### B. *Substantial Compliance*

■ As previously stated, the theory of substantial compliance focuses upon the nature of the notice and is concerned with the extent to which the form, content, and timing of the notice given by the plaintiff complies with the statutory requirements. *Allen*, 496 N.E.2d at 415 n. 3. Thus, the crucial consideration is whether the notice contains sufficient information for the defendant to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense. *Collier v. Prater*, 544 N.E.2d 497, 500 (Ind.1989). What information is sufficient will vary depending on the facts of each case, *id.*, but the question is ultimately a legal determination to be made by the court. *Indiana State Highway Com'n v. Morris*, 528 N.E.2d 468, 471 (Ind.1988).

Here, with respect to substantial compliance, the parties primarily dispute whether the trial court properly applied *Alonso v. City of Hammond*, 648 N.E.2d 1221 (Ind.Ct. App.1995), *reh'g denied, trans. denied*, to the facts of this case. In *Alonso*, the Alonsos filed a proposed class action against the city based upon a rainwater and sewage backup that occurred in the basements of certain residences and businesses. The complaint, filed individually and on behalf of all others similarly situated, claimed that between 800 and 900 property owners had been affected. The Alonsos' attorney sent two notices for the proposed class. The notices contained names and addressed for 60 class plaintiffs.

---

4. Although a CCS entry shows that the trial court sustained the appellees' oral objection to parts of the appellants' designate evidence, it does not disclose the basis for the ruling.

The notices also stated that they were submitted on behalf of all similarly situated property holders not otherwise specifically named. After a hearing, the trial court denied the class certification. On appeal, the disputed issue was whether a class representative could satisfy the notice requirement for those potential class plaintiffs who had not authorized the representative to provide notice on their behalf. We initially recognized the principles underlying the theory of substantial compliance, stating that a notice which substantially complies with the requirements will be deemed sufficient. *Id.* at 1222. Next, we determined that the names and addresses of the claimants listed in the notice were essential information because "until the complaint is filed, the public body would not know that an unnamed claimant existed, or if it did, that the person contemplated filing a claim." *Id.* at 1223 (citing *Putnam County v. Caldwell,* 505 N.E.2d 85, 87 (Ind.Ct.App.1987), *reh'g denied* ). Therefore, we concluded:

> "[O]ne of the purposes underlying the notice requirement is still to inform the municipality that a party is making a claim against it. To hold that a notice on behalf of a class containing approximately 800 unnamed potential plaintiffs serves that purpose would be akin to allowing claimants to rely upon actual notice of the incident to avoid the necessity of giving the statutory notice. . . .
>
> We conclude that no notice was given by the potential class plaintiffs who either did not submit their own notices or who failed to authorize [the Alonsos'] attorney to submit a notice on their behalf. Therefore, an action against Hammond by these potential plaintiffs is precluded.
>
> Our holding today does not mean that class actions cannot be instigated against municipalities. Instead, we hold that the notice requirement of the Tort Claims Act . . . applies to all claims brought against a political subdivision, whether those claims are subsequently brought individually or as a class action."

*Alonso,* 648 N.E.2d at 1223 (footnote omitted). In a footnote, we concluded that if we allowed a class representative to satisfy the

notice requirement without the prior authorization of the potential plaintiffs, then "we would in effect be saying that because a municipality injured a large number of people rather than just a few, the Tort Claims Act no longer provides it the same protection." *Id.* at n. 3.

Our holding was based in part on *Rosga v. City of Hammond,* 493 N.E.2d 787 (Ind.Ct. App.1985), *reh'g denied, trans. denied,* a case where Rosga was injured and her husband was killed in an automobile collision. A timely notice about the accident was served on the city. The notice was signed by an attorney who represented that he was the authorized agent for the executor and administrators of three other people killed in the collision. The caption of the notice stated that it concerned the claims of those three "and all persons similarly situated, injured or killed" in the accident. *Id.* at 788. Despite the fact that the notice mentioned the names of the Rosgas, it did not purport to advance a claim on their behalf. Neither party disputed that Rosga or anyone authorized by her to act failed to give notice to the city within 180 days. We held that Rosga could not rely on the notice served by the other parties even though her claim arose out of the same occurrence because the city was entitled to know that she was making a claim against it. *Id.* at 789. We also held that "as between [Rosga] and the city in this case the situation most closely parallels those where a claimant has attempted to rely upon *actual* notice of the incident to avoid the necessity of giving the statutory notice. Such claims have been uniformly rejected. . . ." *Id.* (citations omitted).

The appellants in the instant case argue that the facts of *Alonso* are distinguishable from those here because in *Alonso* the potential class plaintiffs were unknown to the defendant. The appellants also assert that *Alonso* did not involve the theories of substantial compliance and estoppel. However, we are not persuaded by the appellants' attempts to distinguish *Alonso.*

First, whether the defendants knew who the potential class plaintiffs were is irrelevant. Again, actual notice of the incident is insufficient to avoid supplying notice to the

city under the ITCA. *See id.* The appellants were still required to supply the proper notice even if the appellees knew the names of the potential plaintiffs. The claim that the appellees knew the names of the potential class plaintiffs is not significant to our consideration of whether substantial compliance is applicable. Second, the appellants' assertion that *Alonso* did not involve substantial compliance is erroneous. In that case, we began our discussion by setting forth the requirements under the theory of substantial compliance and by determining that the names and number of the potential class plaintiffs constituted essential information for the theory to apply.

In applying *Alonso* to the present facts, we conclude that substantial compliance does not apply. It is undisputed that the ITCA notice failed to include the number and the names of the potential class plaintiffs short of the appellants' statement that "potentially all teachers who had 403 funds embezzled by [AFG were holding IPS liable] . . . ." Record, p. 100. The notice failed to include a statement by the potential class plaintiffs that the appellants were authorized to file a notice on their behalf. Given the fact that the potential class plaintiffs did not submit their own notice and did not authorize the appellants to file on their behalf, the theory of substantial compliance is not applicable. *See Alonso*, 648 N.E.2d at 1223. In sum, we find that the appellees are not estopped from asserting the deficiency of the ITCA notice and that the appellants have not substantially complied with the notice requirements pursuant to *Alonso*. Because neither of these two doctrine applies, the appellants' deficient notice was properly subject to summary judgment. *See Allen*, 496 N.E.2d at 414. Therefore, we hold that the trial court properly granted the appellees' partial motion for summary judgment.

## II.

The second issue raised is whether the trial court properly denied the motion to certify a class pursuant to T.R. 23. However, because we find that the trial court properly granted partial summary judgment as to the ITCA notice, we need not resolve this issue. Our holding in the first part of this opinion precludes the potential class plaintiffs, who neither submitted their own notice nor authorized the named plaintiffs to file a notice on their behalf, from proceeding in this action. *See id.* Accordingly, the potential class plaintiffs may not proceed in the action and the question of whether the T.R. 23 elements have been satisfied is moot. Therefore, we hold that the trial court properly denied class certification. As such, this case will proceed as an action by Herb Budden, Bonnie Budden, and Christine Muller.

For the foregoing reasons, the judgment is affirmed in all respects.

Affirmed.

RUCKER and GARRARD, JJ., concur.