The BOARD OF COMMISSIONERS OF CASS COUNTY, Indiana, Christopher Cart, Appellants (Defendants Below)

v.

Gregory Eugene NEVITT, Rebecca Nevitt, and Jack Nevitt, as the Natural Parent and Court Appointed Guardian of Gregory Eugene Nevitt, Appellees (Plaintiffs Below).

No. 4–782A221.

Court of Appeals of Indiana, Fourth District.

May 9, 1983.

**334**

---

Tom F. Hirshauer, Jay T. Hirschauer, Logansport, for appellants.

John D. Proffitt, Judith S. Proffitt, Campbell, Kyle & Proffitt, Noblesville, for appellees.

YOUNG, Presiding Judge.

Gregory Nevitt and Rebecca Nevitt (now Spitznogle) brought suit against the Cass County Board of Commissioners (the Board) and Christopher Cart for injuries sustained by Gregory when his car collided with a Cass County snow plow driven by Cart. After a bench trial, the court entered judgment for Gregory against Cart in the amount of $2,750,000; and found for Rebecca against both Cart and Cass County in the amount of $100,000. Appealing these judgments, Cart and the Board raise the following issues:

I. Whether Gregory's action against Cart was barred, under the Indiana Tort Claims Act, after Gregory amended his complaint to remove the Board as a defendant;

II. Whether Gregory's inability to recover from Cart or the Board for his injuries precluded Rebecca's recovery for loss of consortium;

III. Whether the court erred in not finding Gregory contributorily negligent as a matter of law;

IV. Whether Cart and the Board were denied a fair trial because:

A. The court erroneously denied their motion for transfer of venue;

B. The court erroneously denied Cart's motion for a continuance;

C. The court erroneously allowed an attorney for the Nevitts to make an appearance for the first time on the day of trial without prior notice to opposing counsel;

D. The court erroneously denied Cart's motion for a view of the scene of the collision; and

E. The court improperly considered Cass County's liability insurance coverage in ruling on the motions for remittitur and to correct errors;

V. Whether the damages awarded to Rebecca for her loss of consortium were excessive and contrary to law.

We affirm the judgment for Rebecca, but reverse the judgment for Gregory.

The facts relevant to this appeal are as follows: At approximately 1:00 P.M. on February 25, 1978, Gregory Nevitt was driving his car south on Morgan Hill Road, in Cass County. The pavement was dry and the weather was clear. At the same time, Christopher Cart, operating a Cass County snow plow was driving west on County Road 300 South toward Morgan Hill Road. Reaching a stop sign at the intersection, Cart stopped, then proceeded into the intersection as Gregory approached him from his right (north). Gregory, seeing the plow pull into the intersection from his left, applied his brakes, but was unable to stop. Gregory's car rammed the snow plow blade,

and Gregory was seriously injured. He was in a coma for approximately eight months following the collision, and is permanently unable to leave his bed, control his bowels, or speak.

Gregory and his wife Rebecca filed claims for personal injuries and loss of consortium, respectively, against both Cart and the Board. For tactical reasons, however, on the day before trial, Gregory's attorneys moved for leave to file an amended complaint, excluding the Board of Commissioners as a defendant. The court granted this motion on the same day. Cart's first notice of these steps came the next day, on the morning of trial, when the amended complaint was given to his attorneys. Cart's motion for a continuance of the trial to examine the effect of this amendment was denied, and the matter proceeded to trial, culminating in the judgments for Gregory and Rebecca.

### I.

In challenging these judgments, Cart first contends that, when Gregory amended his complaint to remove the Board of Commissioners as a defendant, the action against Cart was barred. This contention is based upon Ind.Code 34-4-16.5-5(a), which provides: "A judgment rendered with respect to or a settlement made by a governmental entity bars an action by the claimant against an employee whose conduct gave rise to the claim resulting in that judgment or settlement." Specifically, Cart contends that the removal of the Board as a party defendant after the statute of limitations had expired constituted a determination that the Board could not be liable to Nevitt in this case, tantamount to a "judgment" barring Nevitt's action against Cart. In response, Nevitt contends that the court's order allowing the removal of the Board of Commissioners was not a "judgment" under Ind.Code 34-4-16.5-5(a). Although we do not agree with Cart's reasoning on this issue, we do agree with his conclusion that the trial court's order dropping the Board of Commissioners from the complaint was a "judgment" under the Tort

Claims Act that barred any further action against Cart.

The correct interpretation of Ind. Code 34–4–16.5–5(a) has recently been discussed in *Burks v. Bolerjack,* (1981) Ind., 427 N.E.2d 887. In *Burks,* the court said:

> The language of the statute is plain and unambiguous. If a governmental employee's conduct gives rise to a claim in tort against the employing governmental entity, any "judgment" rendered with respect to the governmental entity . . . bars an action against an employee.

*Id.* at 889. After further noting that the term "judgment" should be given its "common meaning," the court held that a summary judgment of dismissal is a "judgment" under the act. The court said: "[t]he dismissal of Burks's suit against St. Joseph County was a 'judgment' both final and appealable; it left nothing for resolution between the parties." *Id.* The cases cited in this context by the court hold that a judgment is an order that "puts an end to the particular case," *Thompson v. Thompson,* (1972) 259 Ind. 266, 269, 286 N.E.2d 657, 659, reserving "no further question for future determination." *Id.; Seaney v. Ayres,* (1958) 238 Ind. 493, 497, 151 N.E.2d 295, 297. These cases make it clear that a "judgment" is generally a final order that is appealable without reference to any provision for interlocutory appeals. Such a definition is also supported by Indiana Rules of Procedure, Trial Rule 54(A): " '[j]udgment' as used in these rules includes a decree and any order from which an appeal lies." Thus, the crucial question here is whether the court's order allowing Gregory to remove the Board of Commissioners from his complaint—thereby dropping his claim against the Board—constituted a final, appealable order.

The answer to this question, Gregory contends, is no. He argues that he merely amended his complaint as allowed by Trial Rule 15, and that an order under T.R. 15 has never been viewed as a judgment. Although this may be true, we question the procedure used to terminate the claim against the Board of Commissioners. We believe that a plaintiff who wishes to discontinue his claim against a defendant must seek a voluntary dismissal under T.R. 41(A).[1] The result sought here by Gregory—discontinuance of his claim against the Board of Commissioners—is precisely what T.R. 41(A)(2) was designed to allow.[2] Although the language of T.R. 15 might be construed to allow a plaintiff to achieve the same result by amending his complaint, such a construction would nullify the requirements of T.R. 41(A)(2). Specifically,

---

1. Trial Rule 41(A) provides as follows:

 (1) By plaintiff—By stipulation. Subject to contrary provisions of these rules or of any statute, an action may be dismissed by the plaintiff without order of court:

 (a) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs; or

 (b) by filing a stipulation of dismissal signed by all parties who have appeared in the action.

 Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim. The provisions of this subdivision shall not apply if the plaintiff in such action could not effectuate service of process, or otherwise procure adjudication on the merits.

 (2) By order of court. Except as provided in subsection (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim or cross-claim has been pleaded by a defendant prior to the service upon him or the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim or cross-claim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this subsection is without prejudice.

2. Trial Rule 41(A)(2), rather than 41(A)(1), is applicable here because (1) the dismissal was sought after the Board's answer had been filed, and (2) Nevitt did not procure "a stipulation of dismissal signed by all parties" appearing in the action.

where a counterclaim has been filed, allowing the plaintiff to end his suit against the defendant by amending his complaint, rather than by dismissal, would deny the defendant the protection of T.R. 41(A)(2):

> If a counterclaim or cross-claim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim or cross-claim can remain pending for independent adjudication by the court.

Further, T.R. 41(A)(2) empowers the court to grant a dismissal "under such terms and conditions as the court deems proper." This allows the court to guard the defendant from harassment by assessing costs of the litigation—if not attorney's fees—against the plaintiff seeking to dismiss. *City of Indianapolis v. Central Railroad Co.,* (1977) 175 Ind.App. 120, 369 N.E.2d 1109; 3 W. Harvey, Indiana Practice § 41.1 (1970). Trial Rule 15 contains no such provisions for protecting defendants. Thus, to ensure that the procedural safeguards of T.R. 41(A)(2) are not circumvented by enterprising plaintiffs' attorneys, we hold that a plaintiff who wishes to drop a defendant from his suit may not do so by amending his complaint, but must seek a voluntary dismissal under T.R. 41(A).[3] In light of this holding, we will treat the court's order in this case as one granting a voluntary dismissal under T.R. 41(A)(2).

What remains to be decided is whether such an order granting a voluntary dismissal is a *final, appealable* order, constituting a "judgment" under Ind.Code 34–4–16.5–5(a). We find that it is. Although there is no Indiana authority on this point, other jurisdictions dealing with identical versions of Rule 41 have uniformly found that such an order is a final judgment for purposes of appeal. *Noonan v. Cunard Steamship Co.,* (2d Cir.1967) 375 F.2d 69, 70; *Farrell v. Dome Laboratories,* (1982) Alaska, 650 P.2d 380. In *LeCompte v. Mr. Chip, Inc.,* (5th Cir.1976) 528 F.2d 601, the court stated the general rule as follows:

> Where the trial court allows the plaintiff to dismiss his action without prejudice, the judgment, of course, qualifies as a final judgment for purposes of appeal. Ordinarily, though, plaintiff cannot appeal therefrom, since it does not qualify as an involuntary adverse judgment so far as the plaintiff is concerned.

*Id.* at 603 (quoting 5 Moore's Federal Practice ¶ 41.05[3], (2d ed. 1975)); *accord, Yoffe v. Keller Industries, Inc.,* (5th Cir.1978) 580 F.2d 126; 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2376, at 247 (1971 & Supp.1983). Thus, an order allowing a dismissal under T.R. 41(A)(2) is clearly a final, appealable "judgment" within the common meaning of that term and under Ind.Code 34–4–16.5–5(a).

This conclusion is not altered by the provision in T.R. 54(B)[4] that a dismissal

---

3. This holding conflicts with some federal authority that dismissal under T.R. 41(A) is inappropriate where the plaintiff seeks to dismiss only one of several defendants. *E.g., Harvey Aluminum, Inc. v. American Cyanamid Co.,* (2d Cir.1953) 203 F.2d 105, *cert. denied,* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383. This interpretation of T.R. 41, however, has been rejected in Indiana. *Geiger & Peters v. American Fletcher Nat'l Bank & Trust Co.,* (1981) Ind.App., 428 N.E.2d 1279.

4. Trial Rule 54(B) reads as follows:

(B) *Judgment upon multiple claims or involving multiple parties.* When more than one [1] claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon

of "fewer than all" of the defendants is generally not a final judgment. First, an order granting voluntary dismissal as to one of two defendants has been held to be *immediately* final and effective, even though the requirements of Rule 54 have not been met. *Curtis v. United Transportation Union,* (8th Cir.1981) 648 F.2d 492. More importantly, Indiana courts have made it clear that T.R. 54(B) has no bearing on what constitutes a judgment under the Tort Claims Act. At least four cases have held that, when the governmental entity wins a summary judgment, the court should grant summary judgment in favor of a government employee named as a co-defendant. *Burks v. Bolerjack, supra; Teague v. Boone,* (1982) Ind.App., 442 N.E.2d 1119; *Coghill v. Badger,* (1981) Ind.App., 418 N.E.2d 1201; *Delaware County v. Powell,* (1978) Ind.App., 382 N.E.2d 958, *vacated on other grounds,* (1979) Ind., 393 N.E.2d 190. These cases show that, when both a governmental entity and its employee are sued, a summary judgment for the governmental entity is a "judgment" under the Tort Claims Act, even though it would not be a final judgment under T.R. 54(B). *See Krueger v. Bailey,* (1980) Ind.App., 406 N.E.2d 665. We therefore hold that, by dismissing the Board of Commissioners, the court "rendered a judgment" within the meaning of Ind.Code 34–4–16.5–5(a). The claim against defendant Cart was barred, and the court erred in allowing Gregory

Nevitt to proceed to judgment against him alone.[5]

 This holding is fully supported by the legislative purpose behind Ind.Code 34–4–16.5–5(a):

In enacting chapter 16.5, the legislature sought to establish the boundaries of tort liability of governmental entities and their employees. Section 5 specifically demarcates the liability of public employees. That the legislative intent was to constrict individual liability, not expand it, is apparent from the very title of the section—"Immunity of public employees." Subsection 5(a) makes the liability of a public employee whose conduct gave rise to a claim against a governmental entity coextensive with that of the governmental entity itself; stated succinctly, if the governmental body is released from liability, so is the employee. That is the thrust of the entire act and there is no statement or inference in subsections 5(b) and 5(c) to the contrary. In fact, these subsections reinforce the intended protection of government employees by providing that if suit is brought against the employee *alone,* rather than against the governmental unit and employee jointly, the governmental unit may nevertheless elect to pay "any judgment, compromise, or settlement of a claim . . . against [the] employee" and the government must pay the employee's defense costs.

this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final.

**5.** Because a judgment of voluntary dismissal generally leaves the parties as if the suit had never been brought, *Burnett v. Camden,* (1970) 253 Ind. 354, 254 N.E.2d 199, *cert. denied,* 399 U.S. 901, 90 S.Ct. 2202, 26 L.Ed.2d 556 the statute of limitations was *not* tolled by the pendency of the dismissed suit against the Board. The statutory time having run out, Nevitt could neither refile his claim against the Board nor seek to have the dismissal set aside. *Humphreys v. United States,* (9th Cir.1959) 272 F.2d 411. There is some authority that such a voluntary dismissal after the statutory time has run is a dismissal *with prejudice. State v. Holder,* (1973) 260 Ind. 336, 348, 295 N.E.2d 799, 802 (Prentice, J., concurring). Our deter-

mination of this case, however, does not require a decision whether or not the Board was dismissed with prejudice. Nothing in the Tort Claims Act indicates that a dismissal without prejudice is not a final judgment. Rather, the case law makes it clear that an order with no prejudicial, res judicata effect may nevertheless be a final, appealable judgment. *E.g., Thompson v. Thompson,* (1972) 259 Ind. 266, 286 N.E.2d 657 (holding that a trial court's denial of a motion for waiver of costs was a final appealable order, even though such an order has no res judicata effect). Thus, a dismissal without prejudice is nevertheless a judgment under Ind. Code 34–4–16.5–5(a). We leave for future determination the question of whether a plaintiff who voluntarily dismisses a governmental entity may remove the statutory bar against suing its employees by refiling the claim against the government.

*Coghill v. Badger, supra,* at 1212. The purpose of subsection 5(a) is to ensure that a public employee will not be left to bear sole liability in any case where the claim was initially filed against both the governmental entity and its employee. In this case, Nevitt sought to make Cart bear sole liability for Nevitt's injuries by dropping the Cass County Board of Commissioners from the suit. Such a tactical move is precisely what the legislature enacted § 34–4–16.5–5(a) to prohibit.

## II.

The Board of Commissioners and Cart next contend that the judgment for Rebecca Nevitt on her claim for loss of consortium must also be reversed, since her claim is "derivative" from Gregory's personal injury claim. Specifically, the appellants argue that Rebecca's claim must fail because Gregory's claim against Cart is barred by Ind.Code 34–4–16.5–5(a), because his claim against the Board of Commissioners would be barred by the statute of limitations, and because *both* claims were barred by Gregory's contributory negligence. These contentions raise the question of when an injured husband's inability to recover for his injuries will preclude his wife's claim for loss of consortium. In some jurisdictions, a claim for loss of consortium is totally "derivative," and cannot succeed unless the injured spouse has won a suit for damages. *Tollett v. Mashburn,* (8th Cir.1961) 291 F.2d 89; *Bitsos v. Red Owl Stores, Inc.,* (D.S.D.1972) 350 F.Supp. 850; *Sisemore v. Neal,* (1963) 236 Ark. 574, 367 S.W.2d 417; *Hopson v. St. Mary's Hospital,* (1979) 176 Conn. 485, 408 A.2d 260; *Thill v. Modern Erecting Co.,* (1969) Minn., 284 Minn. 508, 170 N.W.2d 865. Under this view, the loss of consortium claim must fail if, for *any* reason, the injured spouse is prevented from recovering. *Hopson, supra; Thill, supra.* Such jurisdictions often allow a claim for loss of consortium only if it is joined with the injured spouse's personal injury claim. *E.g., Thill, supra.*

This state, however, has adopted a less restrictive view. Traditionally, the husband's right of action for loss of consortium has been viewed as independent and separate from the wife's claim for her injuries. *Burk v. Anderson,* (1952) 232 Ind. 77, 109 N.E.2d 407; *Rogers v. Smith,* (1861) 17 Ind. 323. As a result, a husband's separate suit for loss of consortium has long been allowed. *Ohio & M. Ry. v. Cosby,* (1886) 107 Ind. 32, 7 N.E. 373. Recent cases have held that a wife also may bring a separate suit for loss of consortium against one who has injured her husband. *Troue v. Marker,* (1969) 253 Ind. 284, 252 N.E.2d 800; *Rosander v. Copco Steel & Engineering Co.,* (1982) Ind.App., 429 N.E.2d 990. Under these cases, a successful suit by the injured spouse is not a prerequisite to recovery for loss of consortium.

Nor does every bar to an injured husband's suit necessarily preclude his wife's recovery for loss of consortium. In *Rosander v. Copco Steel & Engineering Co., supra,* the court held that an injured husband's settlement and release of his personal injury claim did not bar his wife's cause of action for loss of consortium. In so holding, the court conceded that a claim for loss of consortium is "derivative," but said:

> placing actions in a derivative posture does not give one party the right to waive the rights of another. Shirley was not a party to the settlement and release negotiated by Darwin, thus she is not bound by it and is free to pursue her separate cause of action.

*Id.* at 991. This decision is not inconsistent with the later decision in *Bender v. Peay,* (1982) Ind.App., 433 N.E.2d 788. In that case, a husband's suit for loss of consortium was filed after his wife's personal injury suit was dismissed on the merits. The court of appeals held that, because the husband's claim for loss of consortium was derivative from his wife's claim, the judgment against the wife also barred the husband's claim.[6]

---

**6.** Judge Neal dissented and argued that a judgment against a wife should not bar her husband's claim for loss of consortium unless he was a party to the wife's suit, even though his claim would have been barred if the claims had been tried jointly. Although Judge Neal's opin-

Some of the court's discussion in *Bender* arguably implies that *any* disposition of the injured spouse's suit bars a subsequent suit for loss of consortium. Such a holding would contradict the decision in *Rosander*. The court in *Bender,* however, did not reject the *Rosander* decision. Instead, they said:

> [*Rosander*] is clearly distinguishable in that no adjudication of liability or non-liability had been made by a competent tribunal. Here, Mrs. Peay's injury claim was fully litigated resulting in an adverse verdict.

433 N.E.2d at 792. Thus, although a wife's claim for loss of consortium is "derivative" from her husband's claim for his injuries, the husband's inability to recover for his injuries does not necessarily preclude his wife's claim for loss of consortium.

 Rather, the claim for loss of consortium will be barred only when the injured spouse's claim is completely invalid. As the court noted in *Arthur v. Arthur,* (1973) 156 Ind.App. 405, 406, 296 N.E.2d 912, 913, "a cause of action for loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer." Absent an actionable injury to one spouse, the other spouse cannot recover for loss of consortium. *Rosander, supra,* at 991. Thus, where the contested injuries were not caused by any tortious misconduct of the defendant, or where the injured spouse's cause of action has been abrogated, the injured spouse has no valid claim, and a claim for loss of consortium is also barred. *Arthur v. Arthur, supra* (abrogation of husband's cause of action bars wife's suit for loss of consortium); *Short 'v. Town of Burlington,* (1981) Mass.App.Ct., 11 Mass.App. 909, 414 N.E.2d

1035 (husband failed to state a claim for intentional infliction of emotional distress—wife's suit barred); *Folley v. United Building & Loan Ass'n of Hackensack,* (1935) 13 N.J.Misc. 293, 178 A. 95 (landowner had no duty to wife, injured while trespassing—husband's suit barred).

 Where, however, an injured husband's recovery is prevented by a procedural bar unrelated to the merits of his claim, his claim should still be viewed as valid, for the purpose of supporting his wife's claim for loss of consortium. The decision in *Rosander* is illustrative. In *Rosander,* the injured husband's settlement with the defendant merely prevented him from asserting his claim; it did not disprove the validity of his claim on the merits. Thus, his wife was properly allowed to recover for loss of consortium. This is consistent with decisions elsewhere that an injured spouse's agreement not to sue does not affect the other spouse's claim for loss of consortium. *Deese v. Parks,* (1981) 157 Ga.App. 116, 276 S.E.2d 269; *City of Paducah v. McManus,* (1934) 256 Ky. 405, 76 S.W.2d 254. Likewise, the running of the statute of limitations against the injured spouse's claim does not bar a timely-filed suit for loss of consortium. *Seymour v. Union News Co.,* (7th Cir.1954) 217 F.2d 168; *Hockett v. American Airlines, Inc.,* (N.D.Ill.1973) 357 F.Supp. 1343; *Mitchell v. White Motor Co.,* (1974) 58 Ill.2d 159, 317 N.E.2d 505; *Corpman v. Boyer,* (1960) 171 Ohio St. 233, 169 N.E.2d 14.[7] In a case similar to this one, one court held that an injured wife's failure to serve a statutorily required notice barred not only her claim but also her husband's loss of consortium claim. *Budahl v. Gordon & David Assoc.,* (1980) S.D., 287 N.W.2d 489. This decision, however, apparently rested on

---

ion represents the majority view, *see* Annot., 12 A.L.R.3d 933, the theory of collateral estoppel on which he relied does not apply to the present case, where Gregory's and Rebecca's claims were brought jointly.

**7.** Two trial court cases to the contrary are *Francis v. Pan American Trinidad Oil Co.,* (D.Del.1975) 392 F.Supp. 1252, and *Morgan v. United States,* (D.N.J.1956) 143 F.Supp. 580. Other cases, which are also sometimes cited for

this contrary rule, actually hold that both the loss of consortium claim and the personal injury claim are governed by the same statute of limitations, so that a claim for loss of consortium is barred if it was filed after time ran out on the personal injury claim. *Schimmel v. Greenway,* (1963) 107 Ga.App. 257, 129 S.E.2d 542; *Rex v. Hunter,* (1958) 20 N.J. 489, 140 A.2d 753; *Desjourdy v. Mesrobian,* (1932) R.I., 52 R.I. 146, 158 A. 719.

**342**

the assumption that *any* disposition of the wife's claim would bar the suit for loss of consortium. Such a harsh rule has clearly been rejected in Indiana cases, which indicate that a claim for loss of consortium will be barred only when the injured spouse's personal injury claim is invalid on the merits. In this case, Gregory's personal injury claim against Cart is barred under Ind.Code 34–4–16.5–5(a), and his claim against the Board would allegedly be barred by the statute of limitations should he refile it. These obstacles to Gregory's recovery, however, are purely procedural: they do not affect the substantial validity of his claims. We accordingly hold that Rebecca's claim against Cart and the Board of Commissioners for her loss of consortium was not precluded by either of these bars to her husband's claims.

### III.

Cart and the Board of Commissioners further contend that the court erred in not finding Gregory Nevitt contributorily negligent as a matter of law, and in allowing Rebecca to recover for loss of consortium despite her husband's contributory negligence. An injured spouse's contributory negligence has widely been held to bar the other spouse's claim for loss of consortium. *See* Annot., 21 A.L.R.3d 469. Nevertheless, this rule has been criticized as an irrational departure from general principles of imputed negligence, and several states have recently rejected it. *Lantis v. Condon,* (1979) 95 Cal.App.3d 152, 157 Cal.Rptr. 22; *Fuller v. Buhrow,* (1980) Iowa, 292 N.W.2d 672. We need not decide, however, whether one spouse's contributory negligence will defeat the other's suit for loss of consortium, because we do not agree the court erred in failing to find Gregory contributorily negligent.

In this case, Cart and the Board of Commissioners bore the burden of proving Nevitt was contributorily negligent. *Gibson v. Henninger,* (1976) 170 Ind.App.

55, 350 N.E.2d 631. They are therefore appealing a negative judgment. In reviewing a negative judgment, we will consider only the evidence most favorable to the appellee along with all reasonable inferences to be drawn therefrom. *Froberg v. Northern Indiana Construction, Inc.,* (1981) Ind.App., 416 N.E.2d 451, 454. Only where the evidence leads to but one conclusion and the trial court has reached the opposite result will the trial court's decision be reversed. *Id.*

The appellants' first contention regarding contributory negligence is that Nevitt's excessive speed was a contributing cause of the accident. The trial court found that Nevitt was travelling between thirty-five and forty-two miles per hour before beginning his skid prior to impact. The appellants contend that since the speed limit was thirty-five miles per hour, Nevitt was driving too fast. There was, however, conflicting evidence as to the speed limit at the place of the accident. There was evidence to support the trial judge's finding that Nevitt's speed was not excessive under all conditions present. The appellants also contend that Nevitt was contributorily negligent as a matter of law because he was driving left of the center line. There was testimony at trial that Nevitt's car was in the proper lane at the time of the collision. Thus, the evidence supports the trial judge's refusal to find contributory negligence. We cannot say that Nevitt was contributorily negligent as a matter of law.

### IV.

Cart and the Board further claim that several procedural errors denied them a fair trial. The first of these alleged errors was the trial court's denial of their motions for transfer of venue under Trial Rule 75. The appellants argue that there can be only one county of preferred venue under T.R. 75(A) [8], and that the numbered provisions of T.R. 75(A) are of descending weight. Thus, the appellants argue, be-

---

**8.** The appellants cite for this proposition the concurring opinion of Judge Sullivan in *Martin v. Indianapolis Morris Plan Corp.,* (1980) Ind.

App., 400 N.E.2d 1173. Nothing in this opinion, however, supports their reading of Trial Rule 75(A).

cause Cass County meets the description in T.R. 75(A)(1), it is the only county of preferred venue, and venue was improperly retained in Hamilton County. This argument reflects a failure to understand the plain language of T.R. 75(A). Because subdivisions (1) to (10) are stated disjunctively,

> [a] plaintiff may elect to bring suit in any county qualifying under subdivisions (1) through (10) of Rule 75(A), and each such county is a county of preferred venue.... The effect will be to give the plaintiff the possibility of bringing suit in a number of places, and if the county is one of preferred venue, the defendant has no right to complain except as he may obtain relief under Rule [76] or Rule 4.4(C).

4 W. Harvey & R. Townsend, Indiana Practice § 75.3, at 536 (1971) (Citation omitted); *Grove v. Thomas,* (1983) Ind.App., 446 N.E.2d 641. In this case, because a governmental organization was included as a defendant in the complaint, the case was properly venued in Hamilton County, where the Nevitts resided. Trial Rule 75(A)(5). The trial court did not err in denying the appellants' motions to transfer.

Appellants also argue that the trial court erred in denying their motion for a continuance, allowing an attorney for Nevitt to make his "of counsel" appearance on the day of trial without prior notice, and denying the Board's motion to view the scene of the collision. They cite no authority on any of these points, however. Any error is therefore waived. A.R. 8.3(A)(7); *Alcoa v. Review Board of the Indiana Employment Security Division,* (1981) Ind.App., 426 N.E.2d 54.

Next, Cart and the Board argue that the court erroneously considered Cass County's liability insurance coverage in ruling on their motion to correct errors. The record shows that, after judgment had been entered against the defendants and they had filed their motion to correct errors, the plaintiffs filed with the court the face sheet of a liability insurance policy covering Cass County. Cart and the Board claim that this action denied them their right to a fair trial. They cite *Seymour National Bank v. State,* (1981) Ind., 428 N.E.2d 203, which held that a municipality does not waive its immunity under the Tort Claims Act or extend its potential liability beyond the Act's limits by purchasing liability insurance. *Id.* at 205. In this case however, there is no evidence that the trial court erroneously relied on any such waiver theory. The only evidence that the court considered the insurance at all is the off-hand comment in his ruling on the defendants' motions to correct errors and for remittitur:

> As for the motion for remittitur the trial Court has wrestled with IC34–4–16.-5–4 of the tort claims act and is faced with the absolute dilemma.
>
> A. If the verdict given to Gregory E. Nevitt is supported by the evidence, and the Court believes that it is, am I to believe the Court can then award to him the $300,000.00 limit, but, given the same evidence and a passenger in his car who suffered minimal injuries. [sic] Then, the five million dollar limitation would apply and statutorily authorize the judgment over the $300,000.00 to Gregory E. Nevitt. I therefore leave to the Appeals Court an interpretation of this most illogical and perplexing statutory guidline [sic] to the trial court.
>
> I therefore deny the motion of remittitur *and further note that some elements of the same type problem exist in IC 34–4–16.5–18 in the stated limits of liability in the commercial umbrella policy.*

(Emphasis added.) This comment hardly indicates that the court's ruling on the defendants' motions was influenced in any way by the disclosure of Cass County's insurance. We will not assume prejudicial error where none appears in the record. The appellants were not denied a fair trial by any of the asserted errors.

## V.

Aside from these alleged errors at trial, Cart and the Board raise several challenges to the damages which the court assessed against them in favor of the Nevitts. Because we are reversing the court's judg-

ment in favor of Gregory Nevitt, we need only consider the propriety of damages awarded to Rebecca for her loss of consortium. Appellants claim that the court's award to Rebecca of $100,000 improperly included amounts to compensate her for (1) lost support, (2) emotional distress, and (3) loss accruing after the dissolution of the Nevitts' marriage. The trial court's findings generally alluded to the elements of loss challenged by Cart and the Board. However, the court's findings and judgment clearly indicate that the damages awarded to Rebecca were exclusively for her loss of Gregory's services and consortium, both proper elements of damages. *Troue v. Marker,* (1969) 253 Ind. 284, 252 N.E.2d 800. Thus, the only question here is whether $100,000 is clearly excessive to compensate Rebecca for the loss of Gregory's services and consortium for the three years between his injury and the dissolution of their marriage.

■■■ Generally, we will not find damages to be excessive unless they are "so outrageous as to indicate passion, prejudice, or partiality." *State v. Bouras,* (1981) Ind. App., 423 N.E.2d 741, 746. The award of the court will be upheld if it is within the scope of the evidence presented. *Id.; Dudley Sports Co. v. Schmitt,* (1972) 151 Ind. App. 217, 279 N.E.2d 266. Here, the evidence supporting the award shows that the Nevitts had been married for three weeks at the time of the collision. Rebecca further testified that:

1. she and Gregory started dating when she was sixteen years of age;

2. Gregory was her best friend;

3. Gregory told her he loved her many times;

4. they did a lot of things together including athletic activities as well as shopping;

5. Gregory would fix the whole meal and do the dishes if Rebecca was tired; and

6. Rebecca and Gregory had taken classes so that Gregory could be present when their son was born.

After emerging from his coma, Gregory showed no signs of recognizing Rebecca. Although $100,000 is certainly a generous award to compensate Rebecca for the loss of Gregory's services and consortium, we cannot say that such damages are "so outrageous as to indicate passion, prejudice, or partiality," *State v. Bouras, supra,* or to lead to a conclusion that the award was based on some improper measure of damages. The trial court is primarily responsible for the difficult task of deciding the monetary value of a relationship shattered by the injury of a spouse. We will not disturb the trial court's ruling unless there was some abuse of discretion. The court did not abuse its discretion in making this award.

The trial court's judgment in favor of Rebecca (Nevitt) Spitznogle is affirmed. The judgment in favor of Gregory Nevitt and Jack Nevitt, his guardian, is reversed and remanded with instructions to dismiss with prejudice their action against Christopher Cart.

MILLER, and CONOVER, JJ., concur.