

FILED

Mar 26 2020, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Rosemary L. Borek
James S. Stephenson
Stephenson Morow & Semler, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Karl L. Mulvaney
Nana Quay-Smith
Dentons Bingham Greenebaum
LLP
Indianapolis, Indiana

R.T. Green
Kellie C. Clark
Collin W. Green
Blackburn & Green
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

City of Columbus,

*Appellant/Cross-Appellee-Defendant,*

v.

Debra A. Londeree and Dan
Londeree,

*Appellees/Cross-Appellants-Plaintiffs.*

March 26, 2020

Court of Appeals Case No.
19A-CT-1228

Appeal from the
Bartholomew Circuit Court

The Honorable
Kelly S. Benjamin, Judge

Trial Court Cause No.
03C01-1801-CT-223

**Kirsch, Judge.**

[1] In this permissive interlocutory appeal, the City of Columbus ("the City")

appeals the trial court's denial of its motion for summary judgment on Debra A.

Londeree's ("Debra") personal injury lawsuit, and, on cross appeal, Dan Londeree ("Dan"), challenges the trial court's granting of the City's motion for summary judgment against his loss of consortium claim. On appeal, the City raises two issues, which we consolidate and restate as whether there are material issues of fact about whether the City can be estopped from raising an affirmative defense against Debra's personal injury claim. On cross appeal, Dan raises one issue, which we restate as whether the trial court erred in granting summary judgment on his loss of consortium claim because that claim is derivative of Debra's personal injury claim.

We reverse in part, affirm in part, and remand.

## Facts and Procedural History

On January 16, 2016, Debra was standing in the parking lot of the Foundation for Youth of Bartholomew County ("FFY") when she slipped and fell because the parking lot was icy. *Appellant's App. Vol. II* at 13. Before leaving FFY's premises, Debra filed an incident report with FFY. *Id*. at 75. On January 25, 2016, Debra called the City's Finance Operations and Risk Office ("Risk Office") about her fall; however, she was told the City had not received the incident report that she had filed with FFY. *Id*. About three weeks after Debra's fall, Colleen Stone ("Stone"), a City employee, called Debra and told her that "the insurance company would contact [her]." *Id*. The City's insurance carrier was Tokio Marine Insurance, HHC ("Tokio Marine"), and FFY's insurance carrier was Cincinnati Insurance. *Id*. at 93, 122.

[4] About one week after she spoke to Stone, Debra received a call from Lori Dixon ("Dixon"), a field claims superintendent with Cincinnati Insurance, FFY's insurer. *Id*. at 75, 122. Dixon had received a copy of the incident report. *Id*. at 112. Dixon did not work for the City or its insurer, Tokio Marine, and she did not tell Debra that she was acting on behalf of the City or Tokio Marine. *Id*. at 123, 143-144, 147. Any correspondence sent by Dixon identified FFY, not the City, as the entity holding the policy with Cincinnati Insurance. *Id*. at 123, 145, 149. Nonetheless, Debra believed Dixon was contacting her on behalf of the City. *Id*. at 75. Dixon recognized that Debra seemed confused about how to pursue her claim. *Id*. at 124. Debra relied on Dixon to know what was required to settle her claim. *Id*. at 76. Debra did not retain legal counsel until much later based on her interactions with Dixon, which led her to believe that filing the incident report was sufficient. *Id*.

[5] Debra and Dixon communicated many times. *Id*. at 76, 120. At Dixon's request, Debra gave a recorded statement. *Id*. at 112. Dixon visited the site of the incident and spoke to FFY to conduct a full investigation. *Id*. at 113-14. Per Dixon's request, Debra signed a medical authorization and sent Dixon medical bills for payment.[1] *Id*. at 76.

[6] Early in her investigation, Dixon began to believe that FFY had no responsibility for Debra's injuries, but that the City might bear some liability for

---

[1] Cincinnati Insurance eventually paid a total of $5,000.00 for Debra's medical bills, the limit under its medical pay coverage, which was available without regard to liability. *Id*. at 119, 145-46.

Debra's injuries because the City provided snow removal services for FFY. *Id*. at 114, 118-20. Dixon did not share these opinions with Debra until much later. In the meantime, Dixon advised Debra that they had two years to settle her claim before the statute of limitations would run. *Id*. at 116. Dixon advised Debra about her right to seek counsel. *Id*. at 116. Dixon never spoke to an adjuster from the City's insurance carrier, Tokio Marine, about Debra's claim against FFY. Dixon had no contact with Dan. *Id*. at 146.

[7] On November 16, 2016, about ten months after Debra's fall, Dixon mailed a letter to Debra, stating that FFY was neither negligent nor liable for Debra's injuries. *Id*. at 76, 117-19, 139, 149. The letter was mailed approximately four months after the deadline for Debra to file a notice of tort claim with the City.[2] After receiving Dixon's letter, Debra left messages for Jaime Brinegar at the City's Risk Office, and she also continued to contact Dixon. *Id*. at 76. Neither Debra nor Dan served a tort claim notice on the City within 180 days after Debra fell on January 16, 2016. *Id*. at 176.

[8] On January 16, 2018, Debra and Dan filed a complaint against both FFY and the City for Debra's injuries from the fall at FFY and Dan's loss of consortium resulting from Debra's injuries. *Id*. at 13-15. In its answer, the City raised an affirmative defense ("the notice defense"), claiming that both Debra's and Dan's claims were barred because neither complied with the 180-day notice

---

[2] *See* Ind. Code § 34-13-3-8(a).

requirement of the Indiana Tort Claims Act "(ITCA")." *Id*. at 16-19. On August 24, 2018, the City filed a motion for summary judgment, again raising the notice defense under Indiana Code section 34-13-3-8(a) and asking the trial court to dismiss both Debra's and Dan's claims. *Id*. at 20-21.[3] In their response, Debra and Dan argued that the City should be estopped from claiming that both Dan and Debra failed to comply with the ITCA's notice requirement because Debra had detrimentally relied on the acts of both the City and FFY in not obtaining counsel and not pursuing a claim until after the time limit under the ITCA had expired. *Id*. at 73-84. After conducting a hearing, the trial court denied the City's motion for summary judgment against Debra's claim, even though Debra did not file a timely notice as required by the ITCA. *Id*. at 181. The trial court explained that there were material issues of fact regarding: (1) Debra's understanding of the relationship between FFY and the City; and (2) whether her reliance on the representations of both FFY and the City was reasonable. *Id*. at 178-81. The trial court found that these questions of fact also created issues of fact about whether the City should be estopped from raising the notice defense.

> The undisputed facts lead to conflicting material inferences sufficient to create a genuine issue of material fact as to Debra's knowledge of the entity relationship or affiliation between FFY, the City, and their insurance companies, as well as detrimental-reliance elements regarding the statements, conduct, and representations by both [ ] Stone and Dixon. There is evidence

---

[3] FFY did not seek summary judgment. *Appellant's App. Vol. II* at 2-12.

that could reasonably support a finding of estoppel, and therefore summary judgment is inappropriate.

*Id*. at 180.

[9] As to the granting of summary judgment against Dan's loss of consortium claim, the trial court determined:

> Dan [ ] has made a separate claim for loss of services and loss of consortium . . . . Loss of consortium is an independent cause of action for purposes of the ITCA. *Putnam County v. Caldwell*, 505 N.E.2d 85, 87 (Ind. App. 1987). A spouse claiming loss of consortium must serve his own tort claim notice in order to fulfill the notice requirements of the ITCA. *Id*. There is no evidence before the court that . . . Dan [ ] served written notice upon the City [ ]. Therefore, his claim is barred due to failure to fulfill the notice requirements of the ITCA.

*Id*. at 177.

[10] On April 17, 2019, the City filed its motion to certify the trial court's ruling for interlocutory appellate review, and on May 5, 2019, the trial court granted the City's request. *Id*. at 183-91, 210-11. On May 31, 2019, the City filed its motion seeking leave from this court to bring an interlocutory appeal, and on June 28, 2019, we granted the City's request. *Id*. at 212-28; *Appellant's App. Vol. III* at 2. On July 10, 2019, the City filed its notice of appeal. *Appellant's App. Vol. III* at 4-8.

## Discussion and Decision

[11] "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326, 330 (Ind. Ct. App. 2006), *trans. denied*. We review a summary judgment ruling de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of the non-moving parties, summary judgment is appropriate if the designated evidence shows no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Id*. The initial burden is on the movant to demonstrate the absence of any genuine issue of fact; if the movant meets that burden, the burden shifts to the non-movant to present contrary evidence that demonstrates an issue for the trier of fact. *Id.*

[12] The ITCA governs tort claims against governmental entities and public employees. *Brown v. Alexander*, 876 N.E.2d 376, 380 (Ind. Ct. App. 2007), *trans. denied*. The ITCA limits the State's liability by barring a potential plaintiff's suit unless he or she complies with the ITCA notice requirements. *Id*. "Such a limitation plainly is acceptable." *Id*. The plaintiff must file the notice within 180 days after the loss occurs. Ind. Code § 34-13-3-8. The notice must describe in a short, plain statement the facts upon which the claim is based. Ind. Code §

34-13-3-10. The purposes of the tort claim notice statute include informing the officials of the political subdivision with reasonable certainty about the accident and the surrounding circumstances so the political subdivision may investigate, determine its liability, and prepare a defense. *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013). The notice requirement helps a governmental entity investigate an allegation while the facts are still "fresh and available." *Mills v. Hausmann-McNally, S.C.*, 55 F. Supp. 3d 1128, 1134 (S.D. Ind. 2014).

## I. The City's Appeal

[13] The City argues there are no material issues of fact about whether it should be estopped from raising the notice defense, i.e., that Debra failed to file a timely notice of tort claim. The City contends that it cannot be estopped from raising the defense based on FFY's representations to Debra, even if it was reasonable for Debra to rely on those representations, because the City had no control over FFY's representations to Debra. In response, Debra asserts that the trial court correctly determined that there are material issues of fact about whether it was reasonable for Debra to rely on FFY's representations as representations made on behalf of the City and, therefore, whether the substance of those representations created material issues of fact about whether Debra's failure to file a timely notice should be excused. In reply, the City maintains that Debra is inappropriately attempting to impute all of Dixon's actions on behalf of FFY to the City.

[14] All forms of estoppel are "based on the same underlying principle: one who by deed or conduct has induced another to act in a particular manner will not be

permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Town of New Chicago v. City of Lake Station ex rel. Lake Station Sanitary Dist.*, 939 N.E.2d 638, 653 (Ind. Ct. App. 2010), *trans. denied*. Estoppel is a "bulwark for fundamental fairness against intentional deception; it applies if 'one party, through its representations or course of conduct, knowingly misleads or induces another party to believe and act upon his or her conduct in good faith and without knowledge of the facts.'" *Mills*, 55 F. Supp. 3d at 1137 (quoting *Purdue Univ. v. Wartell*, 5 N.E.3d 797, 807 (Ind. Ct. App. 2014).

[15] The elements of equitable estoppel are: (1) a representation or concealment of a material fact; (2) made by a person with knowledge of the fact and with the intention that the other party act upon it; (3) to a party ignorant of the fact; and (4) that representation or concealment induces the other party to rely or act upon it to his detriment. *Am. Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224, 234 (Ind. Ct. App. 2004), *trans. denied*. "The party claiming estoppel has the burden to show all facts necessary to establish it." *Story Bed & Breakfast, LLP v. Brown Cty. Area Plan Comm'n*, 819 N.E.2d 55, 67 (Ind. 2004). The State will not be estopped in the absence of clear evidence that its agents made representations upon which the party asserting estoppel relied. *Id.*

[16] In deciding whether estoppel is appropriate, we "must focus on the conduct of the governmental entity; the crucial question is whether the governmental unit had *actual knowledge of and investigated the accident* and surrounding circumstances." *Madison Consol. Sch. v. Thurston*, 135 N.E.3d 926, 929-30 (Ind.

Ct. App. 2019) (emphasis added). Facts that demonstrate a governmental entity's actual knowledge, and thus potentially provide a basis to estop the government from raising a notice defense, include the government's prompt investigation of a claim and:

> preparation of a defense or admissions of liability; letters or writings involving descriptions of the incident, causes and conditions thereof or the nature and extent of injuries; promises; payments; settlements or other conduct or acts of the defendant or his agents or of the plaintiff . . . .

*Delaware Cty. v. Powell*, 272 Ind. 82, 85, 393 N.E.2d 190, 192 (1979). "[T]hese acts and conduct could constitute a waiver of notice *or create an estoppel*." *Id*. (emphasis added).

[17] However, even these activities are insufficient to estop a government from raising a notice defense; a plaintiff is still required to comply with the notice requirement unless the actions of the government unit induced the plaintiff to believe that filing a notice of tort claim was not required. *See Coghill v. Badger*, 418 N.E.2d 1201, 1208 n.6 (Ind. Ct. App. 1981). In other words, "[the] acts of the governmental unit *must have induced the plaintiff to believe that formal notice was unnecessary*." *Id*. (emphasis added). Under such circumstances it is appropriate to estop a government entity from raising the defense that the plaintiff did not comply with the notice requirement. *See Delaware Cty.*, 272 Ind. at 85, 393 N.E.2d at 192.

[18]     In several cases, Indiana courts have addressed whether there were material issues of fact about whether a governmental entity should be estopped from raising a notice-of-tort-claim defense, and we briefly review five of those cases, with the first four cases finding material issues of fact regarding estoppel and the fifth case finding no such material issues of fact. First, in *Delaware County*, which involved a Delaware County truck that struck another vehicle, the Indiana Supreme Court found material issues of fact about whether Delaware County should be estopped from raising a notice-of-tort-claim defense because Delaware County's insurance carrier admitted liability, made payments to the plaintiff totaling $19,000, and told the plaintiff that "they would take care of everything." 272 Ind. at 82-83, 393 N.E.2d at 190-91. Second, in *Madison Consolidated School*, a case where a school bus passenger sued the Madison County schools for injuries incurred during a bus accident, we found material issues of fact about whether Madison County should be estopped from raising the tort notice defense because 1) Madison County's insurance carrier failed to tell the injured party about the requirements of the ITCA, 2) the insurance carrier encouraged the injured party to complete medical treatment before seeking settlement, and 3) the injured party relied on the insurance carrier's advice. 135 N.E.3d at 930-31. Third, in *Allen v. Lake County Jail*, we found material issues of fact about whether Lake County should be estopped from raising a notice-of-tort-claim defense because after Allen reported to the Lake County Jail that some of his personal property had disappeared, Lake County promised to fully reimburse Allen for his loss, in effect representing that litigation would be rendered unnecessary by settlement. 496 N.E.2d 412, 417-

17 (Ind. Ct. App. 1986). Fourth, in *Schoettmer*, the Indiana Supreme Court found there were material issues of fact regarding estoppel where the governmental entity's agent told the plaintiff, at least twice, that "it would be in his best interest to wait until he is released from treatment" before he should try to settle the claim. 922 N.E.2d at 709.

[19] Fifth, and finally, the plaintiff in *Coghill* was hurt while riding an Indianapolis bus, so he sued the Indianapolis Public Transportation Corporation ("the Corporation"). 418 N.E.2d at 1202-03. The only actions taken by the Corporation's claims adjuster were to write a memo, at the request of plaintiff's attorney, that acknowledged receipt of the attorney's letter of representation and invited the attorney to contact the claims adjuster later, and to telephone the attorney, again at attorney's request, to discuss the plaintiff's damages. *Id.* at 1208. The trial court entered summary judgment for the Corporation, finding these activities presented no material issues of fact that would justify estopping the Corporation from raising a notice-of-tort claim defense. *Id.* at 1203, 1208-09. We affirmed the trial court. *Id.* at 1213.

[20] Here, the trial court erred in denying the City's motion for summary judgment on Debra's personal injury claim. As we analyze the issue of estoppel, we must focus on the activities of the City. *See Madison Consol. Sch.*, 135 N.E.3d at 929-30 ("[We] must focus on the conduct of the governmental entity; the crucial question is whether the governmental unit had actual knowledge of and investigated the accident and surrounding circumstances"). Even assuming that Stone, a City employee, intended to mislead Debra by telling her that "the

insurance company would contact [her[,]]" *Appellant's App. Vol. II* at 75, the undisputed facts show that the City did nothing to induce Debra to believe that formal compliance with the notice requirement was not necessary. *See Coghill*, 418 N.E.2d at 1208 n.6. Thus, the trial court erred in ruling that there were material issues of fact about whether the City should be estopped from raising the notice defense.

[21]    In greater detail, we observe that a failure to file a notice of tort claim may be excused if the purposes of the notice statute are fulfilled. *Delaware Cty.*, 272 Ind. at 85, 393 N.E.2d at 192. The purposes of the notice statute include giving a government entity notice to investigate a claim while the facts are still "fresh and available" to acquire reasonable certainty about the facts and circumstances so the government entity may determine its liability and prepare a defense. *See Mills, S.C.*, 55 F. Supp. 3d at 1134; *Schoettmer*, 992 N.E.2d at 706-07. Here, while Dixon acquired some such information through her investigation on behalf of FFY, the City did not investigate the claim and acquire the requisite knowledge to satisfy the purposes of the notice statute. Thus, the City did not have actual knowledge of Debra's fall at FFY.

[22]    However, even if the City had actual knowledge of Debra's fall at FFY, it still would have been improper, as a matter of law, to estop the City from raising the notice defense. The undisputed evidence shows that, after Stone called Debra, the City engaged in no activities or communications with Debra. The City did not: 1) investigate Debra's claim; 2) ask Debra to forward her medical bills; 3) promise to pay Debra's medical bills; 4) solicit information about other

expenses; 5) admit liability; or 6) offer to settle Debra's claim. *See Delaware Cty.*, at 272 Ind. at 85, 393 at 192. Therefore, we conclude, "[the] acts of the [City did not induce Debra] *to believe that formal notice was unnecessary*." *See Coghill*, 418 N.E.2d at 1208 n.6 (emphasis added).

[23] The following cases, discussed in greater detail above, held that estoppel against a notice-of-tort-claim defense was a matter for the trier of fact, but the cases are distinguishable: 1) *Schoettmer*, 992 N.E.2d at 709-10 (government's agent told the plaintiff that "it would be in his best interest to wait until he is released from treatment" before trying to settle the claim); 2) *Delaware Cty.*, 272 Ind. at 82-83, 393 N.E.2d at 190-91 (Delaware County's insurance carrier admitted liability, made payments to the plaintiff totaling $19,000, and told the plaintiff that "they would take care of everything"); 3) *Madison Consol. Sch.*, 135 N.E.3d at 930-31 (insurance carrier encouraged the injured party to complete medical treatment before seeking settlement); and 4) *Allen*, 496 N.E.2d at 416-17 (Lake County promised to fully reimburse Allen for personal items missing from the Lake County Jail).

[24] *Coghill*, however, supports our conclusion. After Coghill sued the Corporation for injuries he suffered on a bus, the Corporation filed an affirmative defense that Coghill failed to file a timely notice of tort claim. Coghill sought to estop the Corporation from using this defense because he claimed the purposes of the notice statute had been fulfilled. *See Coghill*, 418 N.E.2d at 1208. Yet, the only actions taken by the Corporation's claims adjuster were to write a memo acknowledging receipt of the letter of representation from the plaintiff's attorney

and to telephone the attorney to discuss the plaintiff's damages. *Id*. We found that these activities presented no material issues of fact that would justify estopping the Corporation from raising a notice-of-tort claim defense. *Id*.

[25] We conclude that, because the modest level of communication between Coghill and the Corporation was insufficient to create material issues of fact about whether the Corporation could be estopped from raising the notice defense, here, the complete absence of communication (after Stone's phone call) between the City and Debra make it equally, if not more, inappropriate to estop the City from using the notice defense. This is so even if there are material issues of fact about Debra's understanding of the relationship between FFY and the City and regardless of whether Debra's belief that Dixon was working on behalf of the City was reasonable. With estoppel, we focus on the activities of the governmental entity, here, the City, and whether those activities led Debra to reasonably believe that formal compliance with the notice requirement was not required. *Madison Consol. Sch.*, 135 N.E.3d at 929-30; *Coghill*, 418 N.E.2d at 1208 n.6. The State will not be estopped in the absence of clear evidence that its agents made representations upon which the party asserting estoppel relied. *Story Bed & Breakfast*, 819 N.E.2d at 67. Because the City engaged in no activity with Debra after Stone's phone call to Debra, the issues of fact about Debra's knowledge and reliance do not control our disposition of this case. *See Delaware Cty.*, 272 Ind. at 85, 393 N.E.2d at 192; *Coghill*, 418 N.E.2d at 1208 n.6.

[26] Finally, we agree with the City that to impute Dixon's conduct on behalf of FFY to the City would not serve the deterrent purpose of estoppel: "There is

no deterrent effect of equitable estoppel when the party to be deterred cannot control the representations of the third party which induced the reliance." *Appellant's Br.* at 20. Estoppel is designed to discourage a person or entity from making a representation, inducing another person to act, and to then "adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Town of New Chicago*, 939 N.E.2d at 653. Estoppel is a bulwark for basic fairness. *Mills*, 55 F. Supp. 3d at 1137 (discussing *Purdue Univ.*, 5 N.E.3d 797 at 807. Here, the City did not adopt an inconsistent position because it did not even take an initial position regarding Debra's claim. However, even if Stone's phone call is deemed an initial position regarding Debra's claim, the City did not take a subsequent inconsistent position because it took no position whatsoever after Stone called Debra. Imputing Dixon's activities to the City would not serve the fairness principles undergirding estoppel.

[27]     In sum, we find that there are no material issues of fact that estop the City from raising its notice defense. Because it is undisputed that Debra did not file a notice of tort claim, we direct the trial court on remand to enter summary judgment for the City against Debra's personal injury claim.

## II. Dan's Cross Appeal

[28]     Dan argues that if we affirm the trial court's ruling that Debra's claim against the City should survive summary judgment, we should reverse the entry of summary judgment against his loss of consortium claim because such claims are "derivative," that is, such claims derive validity from the personal injury

claim of the injured spouse. *See Appellees' Br.* at 18. In response, the City concedes that, for some purposes, loss of consortium claims are derivative, but for purposes of filing a notice of tort claim, such a claim is an independent claim, thus requiring Dan to file his own notice of tort claim. Because the undisputed evidence shows that Dan did not file such a notice, the City urges us to affirm the trial court's entry of summary judgment against Dan's claim.

[29] In granting summary judgment against Dan's loss of consortium claim, the trial court stated:

> Loss of consortium is an independent cause of action for purposes of the ITCA. *Putnam County v. Caldwell*, 505 N.E.2d 85, 87 (Ind. App. 1987). A spouse claiming loss of consortium must serve his own tort claim notice in order to fulfill the notice requirements of the ITCA. *Id*. There is no evidence before the court that . . . Dan [ ] served written notice upon the City [ ]. Therefore, his claim is barred due to failure to fulfill the notice requirements of the ITCA.

*Appellant's App. Vol. II* at 177.

[30] In *Board of Commissioners of Cass County v. Nevitt*, we held that while a loss of consortium claim is "derivative," termination of the spouse's personal injury claim does not necessarily terminate the loss of consortium claim. 448 N.E.2d 333, 340 (Ind. Ct. App. 1983). In fact, unless the personal injury is invalid on the merits, a loss of consortium claim may proceed if the personal injury claim has been disposed of. *Id*. at 342. Stated differently, if the personal injury claim terminates because of a "procedural bar" unrelated to the merits of the injured

spouse's claim, the loss of consortium claim may still proceed. *Id*. at 341. Examples of procedural bars include the running of a statute of limitations and the injured spouse settling his or her claim with the defendant. *Id*. at 341-42.

[31] Here, our ruling that the trial court should enter summary judgment against Debra's personal injury claim is based on a procedural bar, the failure to file a timely notice of tort claim, not a determination on the merits of her personal injury claim. This would appear to allow Dan's loss of consortium claim to proceed, despite Dan's understanding to the contrary. However, citing *Putnam County v. Caldwell*, 505 N.E.2d 85, 87 (Ind. Ct. App. 1987), here, the trial court observed that when a spouse is pursuing a loss of consortium claim against a governmental entity, that spouse must file his own notice of tort claim. . Because the undisputed evidence is that Dan did not file a notice of tort claim, we affirm the trial court's entry of summary judgment against Dan's loss of consortium claim.

[32] Reversed in part, affirmed in part, and remanded.

Bailey, J., and Mathias, J., concur.